## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA - MIAMI DIVISION

## CASE NO. 23-CV-24236-BB

| | |
|---|---|
| JANE DOE, individually, | )     JURY TRIAL DEMANDED |
| | ) |
| Plaintiff, | )     CIVIL ACTION. |
| v. | ) |
| | )     **ELECTRONICALLY** |
| NORWEGIAN CRUISE LINES, LTD, a | )     **FILED** |
| Bermuda Company; NORWEGIAN CRUISE | ) |
| LINE, doing business in Florida; | ) |
| ALMIGHTY PROTECTION SERVICES; | ) |
| JOHN ROE, an individual, and ROES 1 to | ) |
| 50, Inclusive, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## SECOND AMENDED COMPLAINT WITH JURY DEMAND

Comes Jane Doe ("Plaintiff") for her Second Amended Complaint against

the Defendants, Norwegian Cruise Lines, LTD, Norwegian Cruises Line, Almighty

Protection Services, John Roe and defendants unknown at this time:

1

## **PARTIES**

1.  Plaintiff is an adult female resident of California who is suing under a fictitious name to proceed anonymously for the protection of her privacy rights due to the lurid and emotionally damaging facts in this Second Amended Complaint.

2.  Norwegian Cruise Lines, LTD ("Norwegian") is a Bermuda Company that operates a cruise line business that travels in and out of ports located in Miami, Florida.

3.  Norwegian Cruise Line ("NCL") is a business doing business in Florida operating a cruise line business that travels in and out of ports located in Miami, Florida.

4.  Almighty Protection Services ("APS") is a business providing security service and provided security services for the cruise event held on July 2, 2023, through July 5, 2023.

5.  John Roe was employed or served as an agent for the security services and at all pertinent times provided security services for the cruise event held on July 2, 2023, through July 5, 2023 on the cruise ship and event owned and operated by Norwegian and NCL.

## JURISDICTION AND VENUE

6.   The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights guaranteed by federal court as a result of diversity of parties where the parties included a resident of California filing this action against a foreign company and a domestic company, doing business in and carrying on their regular business in Miami, Florida and an individual working in and employed in Miami, Florida.

7.   The jurisdiction of this Court is further invoked to secure protection and redress deprivation of rights guaranteed by federal court to United States citizens as a result of maritime tort injuries arising out of negligent acts within admiralty jurisdiction for:  (1) the commission or consummation of the act that gives rise to the claim that occurs on navigable waters; and (2) the tort bears a significant relationship to traditional maritime activity.

8.   The amount of controversy in this action exceeds the jurisdictional limits of this Court.

## GENERAL FACTUAL ALLEGATIONS

9.   At all relevant times Norwegian and NCL managed and operated a cruise that embarked and returned out of a port located in Miami Florida and that took place over the weekend July 2, 2023, to July 5, 2023 advertised as the Days of Summer Cruise Fest (the "Summer Cruise Fest").

10.  Norwegian and NCL are common carrier cruise lines that owe the highest degree of care to protect the ship passengers and are required to exercise the utmost care in their operation of the ship for the safety of each passenger.

11.  Promotions used for the Summer Cruise Fest feature and advertised a fun and entertaining cruise.  The advertisements for the Summer Cruise Fest promoted by Norwegian and NCL were provided by CO Cruise, LLC and encouraged customers to join the fun and entertaining cruise.

12.  APS is a company in the business of providing security services for events.  APS was hired to provide security service on board of Norwegian during the Summer Cruise Fest.  APS' authority to provide security for the Summer Cruise Fest, have placed APS and Norwegian in an Agency. The presence of security on the cruise and during Summer Cruise Fest connotes complete awareness by Defendants of the need to maintain order and safety for the passengers, while partying and drinking.

13.  The security service workers were on board of Norwegian working the Summer Cruise Fest event dressed in security attire and were distinctly distinguished from other cruise passengers.  The security attire helped to indicate to all attendees of the Summer Cruise Fest the presence of security.

14.  APS providing security services during the Summer Cruise Fest owed a duty of reasonable care to the attendees of events and as an agent of Norwegian

and NCL and APS owed the heightened utmost duty to the passengers of the cruise and attendees of the Summer Cruise Fest.

15.  At all relevant times John Roe provided security services and was employed by APS while providing security services for the Summer Cruise Fest. During the Summer Cruise Fest John Roe was acting within the course and scope of his employment and agency as security on duty and should have been held to a high standard carrying the authority as trusted security for cruise ship passengers and Summer Cruise Fest attendees.  While working at Summer Cruise Fest John Roe dressed in the attire and wore a security hat as a member of security for the Summer Cruise Fest.

16.  APS was responsible for the acts of John Roe through employer employee respondeat superior relationship.  Norwegian and NCL are responsible for the acts of John Roe through apparent agency.

17.  APS, Norwegian and NCL failed to provide adequate security services for the passengers of the cruise and attendees of Summer Cruise Fest.  APS also failed to provide adequate training and supervision to those providing security services on board of Norwegian.

18.  APS, Norwegian and NCL failed to provide safe and sound passage to the passengers of the cruise and attendees of Summer Cruise Fest.

19. On or about January 28, 2023, the Plaintiff purchased a ticket for the Summer Cruise Fest  for the dates July 2, 2023 through July 5, 2023.  Plaintiff was assigned to cabin number 0334 on the port side of the ship.

20.   At the time of the online purchase of the ticket for attendance at the Summer Cruise Fest, Plaintiff made the registration choice to inform Norwegian and NCL about a disability of difficulty walking.

21.   The Summer Cruise Fest was advertised and promoted by Norwegian, and NCL as a party with lots of drinking, fun, live music performances, comedy shows, multiple pool and other themed parties.

22.   Plaintiff booked the trip for her thirty-third birthday weekend.

23.   On July 3, 2023, Plaintiff attended the performance by Young Jeezy near the pool deck and then attended the Hip-Hop Comedy Show around 9:30 p.m.  Plaintiff had been drinking throughout the day on July 3, 2023, with very little food.

24.   Upon leaving the Hip-Hop Comedy Show, Plaintiff was feeling very intoxicated and became lost and confused on her way to find her cabin.  Plaintiff was dressed only in her swimsuit.

25.   While walking about to find her cabin, Plaintiff was approached by a large security guard dressed in a full security uniform and security hat, John Roe, who asked if she needed help to get to her room.  Plaintiff admitted to being intoxicated from drinking too much and lost.

26.   John Roe said he would help the Plaintiff and escort her to her cabin. Relying on such an offer, the Plaintiff  accepted John Roe's escort.  John Roe, however, led the Plaintiff to a cabin which was not cabin 0334 and Plaintiff realized after she was led into the cabin by John Roe that she was in a strange room.

27.   Once in the unfamiliar cabin, John Roe began to touch Plaintiff's body. Plaintiff tried to get away from John Roe, but John Roe used his size and strength to prevent Plaintiff from getting away.

28.   Against Plaintiff's will, John Roe forced a kiss on Plaintiff and then forced Plaintiff to her knees.  Once on her knees John Roe put his penis in Plaintiff's face and demanded that she suck it.  John Roe forced Plaintiff's head to his penis and penetrated Plaintiff's mouth with his penis.

29.   After John Roe forced penetration of his penis in the Plaintiff's mouth he began to ejaculate on Plaintiff's face, chest, and her swimsuit.

30.   After John Roe ejaculated the Plaintiff was able to get away from John Roe and ran out the cabin door.

31.   After leaving the encounter with John Roe, the Plaintiff was searching for her cabin numbered 0334, and ran into a different security guard who assisted Plaintiff with finding her cabin.

32.   On July 4, 2023, Plaintiff told her cabin mate about the sexual assault inflicted by John Roe.  Plaintiff also went to the ship security office and registered a complaint for sexual assault and further spoke to the boat police.

33.   Upon arrival back at the port located in Miami, Florida and after disembarking from the Norwegian ship, Plaintiff telephoned the local Miami police station and registered a complaint for sexual assault.

34.   When Plaintiff returned to California, she went to Highland Hospital in Oakland, California, and reported a sexual assault and received a related examination.

35.   Plaintiff also filed a police report in Oakland, California, related to the assault she suffered on the Norwegian ship by John Roe.

36.   Plaintiff has been in psychological counseling and therapy for severe depression and constant anxiety resulting from the abuse she suffered from John Roe.

37.   Norwegian failed to provide a safe passage and failed to prevent harm of the passengers.

38.   At least by July 5, 2023, if not earlier, APS and Norwegian knew that John Roe caused harm to a passenger, by inflicting sexual assault.

39.   APS knew or should have known about the propensity of John Roe to commit sexual assault.

**COUNT I:  (Negligence against Norwegian and NCL)**

40.   The Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs above and further alleges as follows:

41.   The Summer Cruise Fest was promoted by Norwegian and NCL as a fun music party for all attendees. The promotions advertising the Summer Cruise Fest encouraged music fans to attend the event.

42.   Norwegian and NCL are common carriers cruise line business that hosted the Summer Cruise Fest, thus, owed a duty to keep its passengers and attendees safe and free from harm.

43.   Norwegian and NCL as a common carrier owed duty of the utmost care to its passengers which included providing safe voyage in addition to preventing foreseeable harm.

44.   At all relevant times Norwegian and NCL owed Plaintiff a duty of care that a reasonably competent cruise service would provide to their passengers.

45.   John Roe was in full uniform and a hat of a security guard on duty on board Norwegian.  John Roe volunteered to assist Jane Doe who was drunk.

46. At that moment of offering to assist Jane Doe, John Roe became an apparent agent for Norwegian and NCL.

47. Norwegian and NCL provided a music venue of Hip Hop on board.  It was in essence a party boat with a substantial amount of liquor available for everyone to consume.  It is foreseeable that in such a venue, passengers would get drunk, hurt themselves, and be harmed by others.  The sexual assault that Jane

Doe experienced was reasonably foreseeable.  The harm was within the zone of danger to which a prudent cruise ship operator could reasonably foresee in such a music venue where drinking was prevalent.

48.  The cruise line as a common carrier cruise line owes the highest degree of care to protect the ship passengers and are required to exercise the utmost care in their operation of the ship for the safety of each passenger. Security, whether from a crew member or independent contractor is a necessity in maintaining safety for all passengers. Therefore, the cruise line cannot delegate that duty to an independent security company contractor. Thus, any negligence of APS may be imputed vicariously to the cruise line. APS and Norwegian and NCS failed to properly vet their security guards, failed to properly hire, failed to properly train and/or supervise, and failed to properly warn passengers, therefore Norwegian and NCS are vicariously liable for the negligence of APS.

49.  John Roe offered assistance to Jane Doe who accepted that assistance and was escorted into a strange room where she was sexually assaulted.  But for the failure to properly vet their security guards, failure to properly hire, failure to properly train and/or supervise, and failure to properly warn passengers of the propensity of John Roe, John Roe would not have been in a position of trust to cause the harm to Jane Doe.

50.  As a direct and proximate result of the Norwegian's negligent operation of its cruise, the Plaintiff experienced pain, suffering, mental anguish, physical

injury, unnecessary medical care and expenses, lost wages, lost future wages, loss of future earning capacity, and was otherwise injured and damaged.

WHEREFORE: Plaintiff claims monetary damages in excess of the concurrent jurisdiction of the District Court ($75,000.00) against Norwegian and NCL, joint and several, in an amount to be determined at trial.  Plaintiff further seeks punitive damages to punish Norwegian and NCL for the willful, wanton, oppressive, malicious, and/or grossly negligent conduct of its apparent agent. Plaintiff further seeks costs, post judgment interest at the legal rate of ten percent (10%) per annum from the date of judgment, and for any further relief that this Honorable Court determines necessary and appropriate.

### COUNT II:  (Strict Liability against Norwegian and NCL)

51.   The Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs above and further alleges as follows:

52.   The Summer Cruise Fest was promoted by Norwegian and NCL as a fun music party for all attendees on board of Norwegian.  The promotions advertising the Summer Cruise Fest encouraged and induced music fans to attend the event.

53.  Norwegian and NCL as a common carrier vessel owes an absolute duty to provide a safe and sound passage and to prevent any type of harm by the crew members on board.

54. John Roe was in a full uniform which included a hat of a security guard while on duty on board the cruise ship. John Roe volunteered to assist Jane Doe who was drunk. At that moment of offering to assist Jane Doe, John Roe became an apparent agent for Norwegian and NCL.

55. Norwegian and NCL provided a music venue of Hip Hop on board. It was in essence a party boat with a substantial amount of liquor available for everyone to consume. It is foreseeable that in such a venue, passengers would get drunk, hurt themselves, and be harmed by others. What Jane Doe was exposed to, namely a sexual assault, was reasonably foreseeable and within a zone of danger to a prudent cruise ship operator with such music venue.

56. John Roe's act of offering assistance in a full security guard uniform and a hat, created an apparent agency for Norwegian and NCL.

57. Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with a third party, when that third party reasonably believes the actor has authority to act on behalf of the principal.

58. In the instant case, John Roe was in a full security guard uniform including a security guard hat when he approached Jane Doe and offered to assist her to find her cabin. It was reasonable for Jane Doe to believe that John Roe was a security guard on duty for the cruise and musical event.

59. Therefore, John Roe was an apparent agent of Norwegian and NCL.

60. Under federal maritime law, Norwegian is strictly liable for crew members and its agents for assault on passengers during the cruise.

61. Here, John Roe as an apparent agent on behalf of Norwegian and NCL and Norwegian and NCL was and is strictly liable for the acts of John Roe.

62. It is reasonably foreseeable that the passengers on Norwegian and NCL would rely on the assistance and help of an onboard security guard dressed in full uniform. Jane Doe was within a zone of danger, entrusting her safety with an onboard security guard.

63. John Roe offered assistance to Jane Doe who accepted that assistance and was escorted into a strange room where she was sexually assaulted. But for the failure to properly vet their security guards, failure to properly hire, failure to properly train and/or supervise, and failure to properly warn passengers of the propensity of John Roe, John Roe would not have been in a position of trust to cause the harm to Jane Doe. But for the intentional actions of assault John Roe, Jane Doe would not have suffered assault and harm while a passenger on the cruise.

64. As a direct and proximate result of the breach of the absolute degree of care, Norwegian and NCL became strictly liable for the assault by John Roes as suffered by Jane Doe. The Plaintiff experienced pain, suffering, mental anguish, physical injury, unnecessary medical care and expenses, lost wages, lost future wages, loss of future earning capacity, and was otherwise injured and damaged.

WHEREFORE: Plaintiff claims monetary damages in excess of the concurrent jurisdiction of the District Court ($75,000.00) against Norwegian and NCL, joint and several, in an amount to be determined at trial.  Plaintiff further seeks punitive damages to punish Norwegian and NCL for the willful, wanton, oppressive, malicious, and/or grossly negligent conduct.  Plaintiff further seeks costs, post judgment interest at the legal rate of ten percent (10%) per annum from the date of judgment, and for any further relief that this Honorable Court determines necessary and appropriate.

### COUNT III:  (Negligence against APS)

65.   The Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs above and further alleges as follows:

66.   The Summer Cruise Fest was promoted by Norwegian and NCL as a fun music party for all attendees held during a cruise experience.

67.  APS performed the services of providing security onboard the cruise ship.

68.  As a security company APS owed a duty to secure the premises and personnel by patrolling, monitoring surveillance equipment and access points. Almighty had a further duty to investigate security breach, incidents, and other alarming behavior.

69.  APS and its employees owed a duty of reasonable care to keep passengers and attendees of the Summer Cruise Fest safe and out of harms way. John Roe was an employee of APS.

70.  At all relevant times APS owed Plaintiff a duty to exercise a degree of care, security and judgment expected of a reasonably security company in the passenger and entertainment services and protect passengers from inappropriate behavior.

71.  John Roe was in a full uniform and wore a hat of a security guard on duty on during the cruise.  He volunteered to assist Jane Doe who was drunk. Once the security guard offers an assistance then the security guard has duty of reasonable care in providing safe security.

72.  APS had a duty to warn the passengers and had a duty to properly train, vet and supervise its employees and warn passengers that John Roe had a propensity for committing sexual assault.

73.  It is foreseeable that the passengers of the cruise and attendees of Summer Cruise Fest would rely on help from security for assistance. Jane Doe was within the zone of danger, entrusting her safety to John Roe at the time when John Roe breached that trust and sexually assaulted Jane Doe.

74.  APS is vicariously liable for the harms caused by its employees and agents such as John Roe.

75.  APS had a duty to warn the passengers and had a duty to properly train, vet and supervise its employees and warn of the propensity of John Roe had a propensity for committing sexual assault where Plaintiff was sexually assaulted. But for the failure to properly vet their security guards, failure to properly hire, failure to properly train and/or supervise, and failure to properly warn passengers of the propensity of John Roe, John Roe would not have been in a position of trust to cause the harm to Jane Doe.

76.  As a direct and proximate result of the negligent, abusive and careless acts of John Roe and APS, Plaintiff experienced pain, suffering, mental anguish, physical injury, unnecessary medical care and expenses, lost wages, lost future wages, loss of future earning capacity, and was otherwise injured and damaged.

WHEREFORE: Plaintiff claims monetary damages in excess of the concurrent jurisdiction of the District Court ($75,000.00) against APS, in an amount to be determined at trial.  Plaintiff further seeks punitive damages to punish APS for the willful, wanton, oppressive, malicious, and/or grossly negligent conduct.  Plaintiff further seeks costs, post judgment interest at the legal rate of ten percent (10%) per annum from the date of judgment, and for any further relief that this Honorable Court determines necessary and appropriate.

### COUNT IV:  (Negligent Hiring, Supervision against APS)

77.  The Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs above and further alleges as follows:

16

78. At all relevant times John Roe was employed by or an agent of APS, providing security services for the Summer Cruise Fest onboard of the cruise.

79. During Summer Cruise Fest, John Roe was acting within the course and scope of his employment or agency as a security guard on duty, and should have been held to a reasonably prudent standard of care in rendering his services as a security guard.

80. As of July 5, 2023, APS knew or reasonably should have known of John Roe's propensities to sexually batter, threaten, harm, assault, and otherwise mentally, physically, and emotionally injure female passengers.

81. The conduct of luring drunk female passenger to his cabin and sexually assaulting them, rendered John Roe incompetent to render his services as a security guard.

82. APS had a reasonable duty of care when hiring, retaining, supervising, training and evaluating its employees.

83. APS hired John Roe as a security guard to be assigned onboard the cruise during the Summer Cruise Fest.

84. As such John Roe was to timely, adequately, and appropriately investigate, heed, and act on all reasonable suggestions and information, in rendering his services as a security guard.

17

85.   When Jane Doe reported to APS regarding the sexual assault committed by John Roe, the sergeant in charge gravely lowered his head and nodded it side to side.  APS knew or should have known John Roe's propensity to misbehave.

86.   When John Roe lured Jane Doe by offering assistance in a full uniform, and subsequently guiding her to his cabin where he sexually assaulted her, John Roe caused the harm.

87.   APS is vicariously liable for John Roe's conduct.

88.   Security guard company's duties include securing premises, patrolling a given area, and guarding access points.  APS was under duty to provide reasonably prudent services as a security company and keep passengers safe and away from harm.

89.   Assaults and sexual batteries and negligent harm of the sort suffered by Plaintiff were entirely preventable had Norwegian, NCL or APS timely, adequately, and appropriately investigated the background of John Roe and prohibited John Roe  from serving on the security force on the cruise during the Summer Cruise Fest.

90.   Norwegian, NCL and APS had a duty to properly vet, failure to properly hire, failure to properly train and supervise and failure to warn the passengers of the propensity of John Roe for sexual assault.  But for the failure of such duties of Norwegian, NCL and APS, Plaintiff would not have suffered the sexual assault.

91.   As the employer/principal responsible for the actions of its employees and/or agents including but not limited to John Roe; APS's negligent hiring, negligent retention and negligent supervision of John Roe was a proximate cause of the Plaintiff's pain, suffering, severe mental anguish, physical injury and expenses, lost wages, lost future wages, loss of future earning capacity, and other injuries and damages.

WHEREFORE: Plaintiff claims monetary damages in excess of the concurrent jurisdiction of the District Court ($75,000.00) against APS in an amount to be determined at trial.  Plaintiff further seeks punitive damages to punish APS for the willful, wanton, oppressive, malicious, and/or grossly negligent conduct.  Plaintiff further seeks costs, post judgment interest at the legal rate of ten percent (10%) per annum from the date of judgment, and for any further relief that this Honorable Court determines necessary and appropriate.

### COUNT V:  (Assault and Battery against John Roe)

92.   The Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs above and further alleges as follows:

93.  Norwegian and NCL are common carrier cruise lines that owe the duty of utmost care to its passengers onboard during the passage.

94.  Norwegian and NCL owed a special duty of care to its passengers and was expected to use the highest care, vigilance and foresight to avoid harm to passengers attending the Summer Cruise Fest.

95.   The conduct and actions of John Roe including the sexual assault and battery of Plaintiff constitutes an intentional and offensive touching of Plaintiff to which Plaintiff did not consent.

96.   The conduct of John Roe was harmful and offensive and was not warranted nor justifiable.

97.   Jane Doe never consented to John Roe's act.

98.   The intentional, nonconsensual touching of Plaintiff by John Roe was highly offensive to Plaintiff's reasonable sense of dignity.

99.   As a direct and proximate result of the intentional acts of John Roe, Plaintiff experienced pain, suffering, mental anguish, physical injury, unnecessary medical care and expenses, lost wages, lost future wages, loss of future earning capacity, and was otherwise injured and damaged.

WHEREFORE: Plaintiff claims monetary damages in excess of the concurrent jurisdiction of the District Court ($75,000.00) against John Roe in an amount to be determined at trial.  Plaintiff further seeks punitive damages to punish John Roe for the willful, wanton, oppressive, malicious, and/or grossly negligent conduct.  Plaintiff further seeks costs, post judgment interest at the legal rate of ten percent (10%) per annum from the date of judgment, and for any further relief that this Honorable Court determines necessary and appropriate.

## PLAINTIFF'S REQUEST FOR JURY TRIAL

Plaintiff, prays for a trial by jury on all issues.

Dated:  March 29, 2024

Respectfully Submitted,

***/s/ Reginald D. Hicks, Esq.* (FL Bar No. 071464)**
Reginald D. Hicks, P.A.
633 S. Federal Hwy., Suite 200B
Fort Lauderdale, FL 33301
Telephone: 954-546-0013
Facsimile: 954-546-0014
legal@hicksmlg.com

Respectfully Submitted,

***/s/ Alex C. Park, Esq.* (CA Bar No. 197781)**
Alex C. Park
LAW OFFICES OF ALEX C. PARK
10080 N Wolfe Road, Suite SW3262, Cupertino, CA 95014
Telephone: 408-246-1515
Facsimile: 408-246-4105
alexcpark@hotmail.com

Respectfully Submitted,

***/s/ Carlyle G. Varlack, Esq.* (CA Bar No. 147641)**
Carlyle Varlack
Law Offices of Carlyle Varlack
1999 S. Bascom Avenue, Suite 700, Campbell, CA 95008
Telephone:  408-295-0893
Facsimile: 408-246-2989
carlylevarlack@hotmail.com

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on 29th day of March 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to registered parties.


**_/s/ Reginald D. Hicks, Esq._ (FL Bar No. 071464)**
Reginald D. Hicks, P.A.
633 S. Federal Hwy., Suite 200B
Fort Lauderdale, FL 33301
Telephone: 954-546-0013
Facsimile: 954-546-0014
legal@hicksmlg.com