UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-24236-BLOOM/Torres

JANE DOE,

    Plaintiff,

v.

NORWEGIAN CRUISE LINES, LTD, a
Bermuda Company; NORWEGIAN CRUISE
LINE, doing business in Florida;
ALMIGHTY PROTECTION SERVICES;
JOHN ROE, an individual, and ROES 1 to
50, Inclusive,

    Defendants.
_____/

## DEFENDANTS NORWEGIAN CRUISE LINE LTD'S AND NORWEGIAN CRUISE LINE'S PARTIAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT [ECF NO. 60]

Defendants, Norwegian Cruise Lines, Ltd, and Norwegian Cruise Lines, pursuant to Federal Rule of Civil Procedure 12(b)(6), move to partially[1] dismiss Plaintiff's Second Amended Complaint [ECF No. 60].[2]

### INTRODUCTION

Plaintiff alleges she was sexually assaulted by John Roe, who was a security officer employed by co-defendant Almighty Protection Services ("APS"), while onboard a Norwegian

---

[1] To avoid piecemeal filings (and to conserve judicial and party resources), Norwegian has not filed a partial answer to Plaintiff's other counts. Filing a partial motion to dismiss effectively suspends that party's response time for the entire complaint. *See, e.g., McBride v. Liberty Mutual Fire Ins. Co.*, 2017 WL 4286316, *1 (M.D. Fla. 2017); *Finnegan v. University of Rochester Medical Ctr.*, 180 FRD 247, 249-50 (W.D.N.Y 1998) ("weight of case authority holds that the filing of a motion that addresses only part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are subject of the motion"). To the extent the Court may require Norwegian to file a partial answer, Norwegian respectfully requests an enlargement of time of up to and including 14 days from disposition of this motion in which to file same in keeping with FED. R. CIV. P. 12(a)(4).

[2] Norwegian does not respond here to allegations directed at the other Defendants.

cruise ship on July 3, 2023. After attending an onboard musical performance, Plaintiff was intoxicated and lost while trying to return to her stateroom. [¶¶ 23–24]. She then encountered John Roe, who offered to escort her to the room. [¶¶ 25]. John Roe, however, led Plaintiff to a different, unfamiliar stateroom. [¶ 26]. Once inside the stateroom, John Roe allegedly sexually assaulted her. [¶¶ 27–30].

As to Norwegian, Plaintiff raises two counts in the Second Amended Complaint—negligence in Count I and strict liability in Count II—and she prays for punitive damages in both. Norwegian moves to dismiss Count I, all claims for punitive damages, and any remaining shotgun pleading.

## MEMORANDUM OF LAW

To survive dismissal, a complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *See Martins v. Royal Caribbean Cruises, Ltd.*, 174 F. Supp. 3d 1345, 1350 (S.D. Fla. 2016) (citing *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)). Legal conclusions unsupported by factual allegations must be disregarded, as they are "not entitled to the assumption of truth" generally afforded to allegations in a complaint. *Iqbal*, 556 U.S. at 678–79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Rather, the complaint must contain sufficient factual allegations for the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

MASE SEITZ BRIGGS

### I. Count I should be dismissed because Plaintiff cannot recover on a negligence theory for a tort that implicates strict liability.

Negligence claims cannot be raised in conjunction with strict liability claims when the negligence claims are premised on a failure to prevent the tort that gives rise to strict liability. Plaintiff, however, raises various negligence theories alongside her strict liability claim. Pursuant to this doctrine, the negligence count should be dismissed.

Two cases, both styled *Garcia v. Carnival Corp.*, control this issue. *See Garcia v. Carnival Corp.*, Case No. 13-21628-civ-ALTONAGA/O'Sullivan, 2014 WL 12531509, *3 (S.D. Fla. Apr. 10, 2014); *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1337 (S.D. Fla. 2012). In the 2014 case, the plaintiff alleged that she was involved in a marital dispute before Carnival Security intervened. *See* 2014 WL 12531509 at *1. After intervening, she contended Carnival Security assaulted, battered, and sexually assaulted her. *See id.* She raised two counts: one for strict liability for the assaults and batteries; and the other for Carnival negligently failing to respond to the martial disagreement, failing to properly train and supervise its employees, and failing to use an appropriate amount of force. *See id.* at *2–3. Judge Altonaga granted summary judgment on all negligence theories. Because "Carnival cannot be found negligently liable for the commission of the same intentional tort for which Carnival is strictly liable," the claims "stemming from the actions of Carnival's security personnel" had to be dismissed. *See id.* at *3.

Judge Altonaga relied on a case decided two years earlier by Judge Moore. *See id.* at *3 (citing *Garcia*, 838 F. Supp. 2d at 1337). In that case, the plaintiff purportedly had a disagreement with an onboard bartender and was then approached by seven crewmembers who physically assaulted her. *See Garcia*, 838 F. Supp. 2d at 1336. The complaint was a shotgun pleading that commingled intentional tort claims with claims that the "Defendant failed to prevent intentional torts against Garcia." *See id.* at 1337. The court held that "it is improper to state a claim for

negligence premised solely on the defendant's alleged commission of an intentional tort." *Id.* Holding Carnival negligent for failing to prevent the crewmembers' intentional torts would "eviscerate any distinction between tort liability premised on negligence and tort liability premised on intentional tortious activity." *Id.* Since the plaintiff could proceed on a strict liability theory, the negligence claims were dismissed with prejudice.

Here, Plaintiff raises a similar negligence theory as was raised in the *Garcia* cases. *See* ECF No. 60 at ¶ 49. Because such theories cannot be raised in conjunction with a strict liability claim, as found in Count II, the Court should dismiss the negligence claim in Count I.

## II. Alternatively, Count I should be dismissed for a lack of foreseeability.[3]

To be negligently liable for an attack on a passenger, the specific attack must be reasonably foreseeable to a cruise line. But there are no allegations to suggest that Norwegian had reason to know that John Roe was about to attack Plaintiff. Thus, even if the Court disagrees with Norwegian's first argument, the negligence claim should still be dismissed for a lack of foreseeability.

Intentional torts and illegal acts are generally deemed unforeseeable as a matter of law. *See Wiegand v. Royal Caribbean Cruises*, No. 21-12506, 2023 WL 4445948, *5 (11th Cir. July 11, 2023) (citing *Decker v. Gibson Prod. Co. of Albany*, 679 F.2d 212, 215 (11th Cir. 1982)). When the allegations are devoid to suggest reasonable foreseeability of a specific attack, the Court should dismiss a plaintiff's direct negligence claim for lack of duty and causation. *See J.F. v. Carnival Corp.*, --- F. Supp. 3d ---, 2023 WL 9422384, *4 (S.D. Fla. Dec. 27, 2023), *appeal docketed*, No. 24-10259 (11th Cir. Jan. 24, 2024), (citing *Fuentes*, 32 F.4th at 1317) ("When the record is devoid

---

[3] This argument is substantively identical to the argument raised in Norwegian's initial motion to dismiss. Because Plaintiff did not cure the deficiencies, Norwegian reraises the arguments here.

of evidence to suggest reasonable foreseeability of a specific attack, the Court should grant summary judgment on both the duty and causation elements of a plaintiff's negligence claim.").

　　A. Duty

In terms of duty, Norwegian must protect against or warn of attacks only when Norwegian or its employees could "reasonably apprehend the danger such that the attack was foreseeable." *Fuentes*, 32 F.4th at 1317; *see also* Restatement (Second) of Torts § 344, cmt. f ("Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur."). And, as a corollary, it is not within a shipowner's duty to deter unforeseeable criminal acts, as such deterrence is within the realm of criminal law and not tort. *See* Restatement (Third) of Torts: Physical and Emotional Harm § 30, cmt. b, *cited in* 57A Am. Jur. 2d Negligence § 564 (May 2023 update) ("Deterrence, it is true, can be obtained by criminal and regulatory systems, but those devices remain outside the tort system. From a corrective-justice perspective, a merely serendipitous causal connection between the tortious aspect of the actor's conduct and the other's harm provides little reason for requiring the defendant to correct for that which has been wrongfully taken from the plaintiff.").

The plaintiff in *Fuentes* brought claims against the cruise line for negligent security. *See id.* at 1316. The district court granted summary judgment in favor of the cruise line due to a lack of foreseeability. On appeal, the plaintiff pointed to other cases where fights occurred in cruise ship crowds to argue that the cruise line knew of the dangers or, at a minimum, there was an issue of fact as to the foreseeability of fights occurring in large groups. *See id.* at 1318–20.

The court concluded such a dispute was immaterial to liability because the "specific danger" must be foreseeable. *See id.* at 1319. The unanimous Eleventh Circuit panel rejected the plaintiff's argument because there was no evidence that the cruise line could reasonably foresee

the actual attack on Mr. Fuentes. Circuit Judge Jordan criticized the plaintiff's proffered foreseeability framework as "too high a level of generality and ignor[ing] too many variables." *Id.* at 1317–18 (quoting *Keefe*, 867 F.3d at 1322) ("Because a cruise line is not 'an insurer' of its passengers' safety, the foreseeability determination must have some connection to the events that gave rise to the negligence claim.").

Here, Norwegian could not have foreseen the danger that John Roe posed to Plaintiff. The only allegations as to Norwegian's notice or foreseeability of John Roe's alleged acts is that all defendants "knew at least by July 5, 2023" about any alleged acts of John Roe and that Plaintiff told the security office about the assault the day after it happened. *See* ¶ 32, 38. Because Plaintiff alleges the incident occurred on July 3, 2023, Plaintiff is alleging that Norwegian had notice of John Roe's alleged acts only <u>after</u> her alleged incident. Also, Plaintiff fails to allege with any specificity facts that support her theory that John Roe had a propensity to commit any misconduct or a sexual assault. Plaintiff has not sufficiently alleged notice or that John Roe's actions were reasonably foreseeable to Norwegian for it to be negligently liable.

A similar issue arose in *H.S. by and through R.S. v. Carnival Corp.*, 727 Fed. App'x 1003 (11th Cir. 2018) ("H.S."). The plaintiff in H.S. was a fourteen-year-old girl at the time of her cruise, and she was allegedly sexually assaulted in a stateroom by two teenaged boys after they all left a club for teenagers. *See id.* at 1004. The plaintiff met and had spent significant time with the alleged assailants onboard before the alleged assault. But unlike this case, the plaintiff alleged that there were repeated sexual acts—which the plaintiff resisted—in front of the cruise line's employees. *See id.* In response to a Rule 12(b)(6) motion, the plaintiff argued that these alleged facts were sufficient to put the cruise operator on notice that the assailants posed a danger and for a jury to

conclude that cruise operator was liable for failing to intervene, but the district and appellate courts disagreed. *See id.* at 1005–06.

The Eleventh Circuit held that the plaintiff failed to allege facts sufficient for the defendant to be "aware of teenage boys sexually assaulting teenage girls on its vessels or, more specifically, that teenage girls were leaving the youth nightclub, visiting peers' staterooms unchaperoned, and being sexually assaulted." *Id.* at 1006. The cruise operator could not reasonably expect that the plaintiff would be assaulted simply because the cruise operator's employees saw a teenage boy attempt to remove the plaintiff's clothing or digitally penetrate her within Club 02. *See id.* at 1004. Without facts to support that the defendant could reasonably foresee actual violence occurring in the stateroom, the *H.S.* plaintiff failed to state a claim.

The same rationale applies here—in fact, within the context of foreseeability in a negligent security claim, the alleged facts were far worse in *H.S.* than they are here. Unlike in *H.S.*, there is no public wrongdoing alleged to trigger foreseeability of the crime. Like *H.S.*, though, even if Norwegian had a duty to have superior security onboard, such breaches could not proximately cause Plaintiff's sexual assault. More security would not have altered the outcome here.

    B. <u>Causation</u>

In addition to duty, foreseeability can also defeat the causation element. The intervening-act and superseding-cause doctrine "relieve[s] the defendant of any liability" when an intentional tort or crime is "so unusual, extraordinary, or bizarre" that the defendant's negligence, if any, could not be a proximate cause of the injury. *See Colon v. Twitter, Inc.*, 14 F.4th 1213, 1224 (11th Cir. 2021) (interpreting Florida law). Generally, third-party criminal acts are deemed to break the chain of causation between a shipowner's negligence and the injury suffered. *See Wiegand*, 2023 WL 4445948 at *4–5 (federal maritime law). A shipowner "providing the occasion" for another's crime is insufficient for liability; rather, the shipowner's negligence must "set in motion a chain of events

culminating in injury to the plaintiff" for proximate cause to exist. *See Worthington v. U.S.*, 21 F.3d 399, 405 (11th Cir. 1994) (Florida law) (citations omitted).

There is no causation alleged for a negligent security claim because Norwegian cannot reasonably intrude on passengers' privacy in their staterooms, so Norwegian could not have prevented the alleged sexual assault even if it had a duty to have superior security. *See Brown v. NCL (Bahamas) Ltd.*, Case No. 15-21732-CIV-LENARD/Goodman, 2016 WL 8716482, *7–8 (S.D. Fla. Oct. 13, 2016) (concluding assault by another passenger in a stateroom to be unforeseeable to the cruise line as a matter of law because "the first time [plaintiff] felt threatened by [the assailant was] when he pulled her down onto his bed in his cabin"). Accordingly, on both the duty and causation elements, Plaintiff fails to allege facts sufficient to state a plausible claim.

**III.     Punitive damages are unavailable because there are no allegations of intentional misconduct by Norwegian or that it authorized or ratified a tort.**

Punitive damages are available against a maritime employer only upon a showing of intentional misconduct by the employer itself or a showing that the defendant authorized or ratified its employee's tortious conduct. There is no allegation to support either conclusion here. Accordingly, the Court should dismiss Plaintiff's prayers for punitive damages in every surviving count.

   A. <u>*Amtrak's* intentional misconduct standard remains binding.</u>[4]

Under general maritime law, passengers' recovery options are limited to pecuniary damages "except in exceptional circumstances such as . . . those very rare situations of intentional wrongdoing." *See In re Amtrak Sunset Ltd. Train Crash*, 121 F.3d 1421, 1429 (11th Cir. 1997) (hereinafter "*Amtrak*"). *Amtrak* involved a train that derailed and collided with a vessel, which

---

[4] Although Subsection (A) is substantively identical to Norwegian's initial motion to dismiss, the subsequent subsections are new arguments.

caused passenger deaths over state territorial waters. The district court held Alabama's wrongful death law could supplement the damages allowed under maritime law, and thus punitive damages were available. But the Eleventh Circuit reversed, holding Alabama's wrongful death statute, which allowed punitive damages upon a finding of gross negligence, conflicted with general maritime law, which requires a finding of intentional conduct.

*Amtrak* remains the standard for ship passenger claims, but seamen are held to a different standard. They are entitled to maintenance and cure, which is an ancient doctrine akin to workers' compensation designed to compensate crewmembers after suffering illness or injury while in service of the vessel. When an employer-shipowner arbitrarily or willfully denies a seamen maintenance and cure, punitive damages are available, as established by *Atlantic Sounding v. Townsend*, 557 U.S. 404, 414–15 (2009).

Two separate standards thus emerged in light of *Atlantic Sounding*: (1) seamen can obtain punitive damages upon a showing of either gross negligence or intentional misconduct; and (2) passengers can obtain non-pecuniary damages for personal injury only upon a showing of intentional misconduct.

Though the standards for crewmember and passenger claims are independent doctrines, they were mistakenly conflated in two cases that interpreted *Atlantic Sounding* shortly after it was rendered. Despite what those anomalous cases held, *Atlantic Sounding* did not abrogate *Amtrak*. *See Doe v. Royal Caribbean Cruises, Ltd.*, Case No. 11-23323-CIV, 2012 WL 920675 (S.D. Fla. 2012); *Lobegeiger v. Celebrity Cruises, Inc.*, Case No. 11-21620-CIV, 2011 WL 3703329 (S.D. Fla. 2011). *Atlantic Sounding* held only that a vessel owner may be liable for punitive damages if it recklessly, wantonly, willfully, or intentionally fails to pay maintenance and cure. It did not touch the standard for non-pecuniary damages in personal injury claims established in *Amtrak*,

as confirmed by an on-point decision from the Eleventh Circuit. *See Eslinger v. Celebrity Cruises, Inc.*, 772 F. App'x 872, 873 (11th Cir. 2019) (citing *Amtrak*, 121 F.3d at 1429) ("Our court has held that Plaintiffs may not recover punitive damages . . . for personal injury claims under federal maritime law."); *Petersen v. NCL (Bahamas) Ltd.*, 748 F. App'x 246, 252 (11th Cir. 2018) ("Nothing in [*Atlantic Sounding*] undermines our holding in *In re Amtrak*."). *See also Hall v. Carnival Corp.*, 536 F. Supp. 3d 1306, 1311–13 (S.D. Fla. 2021); *Ginley v. Dutra Dredging Co.*, No. 19-23487-CIV, 2020 WL 13379369, *2–4 (S.D. Fla. June 30, 2020).

Accordingly, the Court should analyze Plaintiff's punitive damages claims under the *Amtrak* standard: to impose punitive damages, Plaintiff must prove that "exceptional circumstances" exist, such as "those very rare situations of intentional wrongdoing," which appears to be unprecedented in personal injury cases governed by federal general maritime law. *See Amtrak*, 121 F.3d at 1429 ("We are aware of no decision in the Supreme Court or in any of the circuit courts which has authorized punitive damages in a personal injury case.").

B. <u>Absent intentional misconduct, punitive damages are unavailable even under the strict liability standard.</u>

Imposing strict liability against a shipowner like Norwegian does not automatically transpose the assailant's actions onto the shipowner for purposes of punitive damages. Instead, for punitive damages to lie, there must be intentional misconduct by the shipowner itself or ratification or authorization of an employee's intentional tort. Because Plaintiff has no allegation to support intentional misconduct or ratification or authorization, the Court should dismiss Plaintiff's claims for punitive damages in all counts, including the claims for strict liability in Count II.

The Supreme Court first limited the availability of punitive damages in federal maritime law in *The Amiable Nancy*, 16 U.S. 546 (1818) (Story, J.) (prohibiting the imposition of punitive damages against privateers). Seventy-five years later, the Supreme Court expanded its holding by

prohibiting punitive damages for vicarious liability against a common carrier absent any direct participation in the employee's tort. *See Lake Shore & M.S. Ry. Co. v. Prentice*, 147 U.S. 101, 107 (1893) ("*Lake Shore*") ("Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive, or malicious intent on the part of the agent."). Like here, *Lake Shore* had to analyze the standard for obtaining punitive damages under a vicarious liability theory for an intentional tort, and it expressly rejected the notion that the employee's actions are imputed onto the corporation for purposes of punitive damages. *See id.*

Binding law thus begins with the principle that punitive damages are designed only to punish the wrongdoer and to deter similar conduct in the future. *See Lake Shore*, 147 U.S. at 107. Those goals are not furthered "when courts drop the punitive damage hammer on the principal for the wrongful acts" of its employee, even when the employer is a common carrier. *See Matter of P&E Boat Rentals, Inc.*, 872 F.2d 642, 651 (5th Cir. 1989). The Supreme Court's opinion in *Lake Shore* remains binding and provided the grounds for the Restatement (Second) of Torts, Section 909, which has been generally adopted by the circuits as binding for federal maritime law.

Section 909 enumerates the instances for which a principal should be liable for punitive damages under vicarious liability:

MASE SEITZ BRIGGS

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,
>
> > (a) the principal authorized the doing and the manner of the act, or
> >
> > (b) the agent was unfit and the principal was reckless in employing or retaining [the agent], or
> >
> > (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
> >
> > (d) the principal or a managerial agent of the principal ratified or approved the act.

Restatement (Second) of Torts, § 909.

Multiple circuit courts have considered *Lake Shore* and *The Amiable Nancy* and ruled that, under federal maritime law, punitive damages should be imposed against a shipowner in accord with Section 909 of the Restatement (Second) of Torts because it tracks the Supreme Court's rationale in those cases. *See Muratore v. M/S Scotia Prince*, 845 F.2d 347, 354–56 (1st Cir. 1988); *Protectus Alpha Nav. Co., Ltd. v. North Pac. Grain Growers, Inc.*, 767 F.2d 1379, 1385–87 (9th Cir. 1985). But in the First, Fifth, and Sixth Circuits, the standard is **even stricter** because they rejected Section 909(c), which would impose liability against a maritime employer for a manager's tortious conduct committed within the scope of employment. *See U.S. Steel Corp. v. Fuhrman*, 407 F.2d 1143, 1148 (6th Cir. 1969), *adopted in Matter of P&E Boat Rentals, Inc.*, 872 F.2d at 650–53 *and CEH, Inc. v. F/V Seafarer*, 70 F.3d 694, 702–05 (1st Cir. 1995) (rejecting "wholesale adoption" of Section 909(c) under general maritime law and imposing an even higher standard to impose punitive damages for managerial misconduct because, when "read literally, [Section 909(c)] could impose liability in circumstances that do not demonstrate any fault on the part of the principal").

In sum, maritime law is exceptionally strict when it comes to imposition of punitive damages against a maritime employer—even in the context of intentional torts. It does not matter whether the maritime employer is a common carrier and strictly liable for an intentional tort;

punitive damages should be imposed against a shipowner "because of an act of an agent if, but only if," one of the elements in Section 909 is present. *See Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322–23 (M.D. Fla. 2002) (striking punitive damages claims despite acknowledging that the cruise line would be strictly liable for intentional torts arising from sexual assault). *See also Garcia v. Carnival Corp.*, No. 13-21628-CIV-ALTONAGA, 2014 WL 12531509, *2–3 (S.D. Fla. Apr. 10, 2014) (dismissing prayer for punitive damages in strict liability claim); *Fiorillo v. Carnival Corp.*, No. 12-21599-CIV-COHN, 2013 WL 632264 (S.D. Fla. Feb. 20, 2013) (same).

### C. There are no allegations that Norwegian committed intentional misconduct or that it authorized or ratified John Roe's tort.

No allegations in the Second Amended Complaint could plausibly rise to a finding that Norwegian acted with intentional misconduct. In fact, the complaint contains allegations that Norwegian committed only three relevant actions: it provided the music venue, it advertised the cruise, and it retained APS. *See* ECF No. 60 at ¶¶ 11–12, ¶ 47, ¶ 52, ¶ 55. All other allegations relating to Norwegian discuss only what Norwegian did not do. Such omissions or failures to act cannot rise to intentional misconduct.

Nor is there an allegation that plausibly suggests Norwegian authorized or ratified John Roe's purported assault.

Without intentional misconduct or authorization or ratification of the tort, Norwegian cannot be liable for punitive damages. Therefore, the prayers for punitive damages in each count against Norwegian fail to state a claim upon which relief can be granted, including the punitive damages claims in the strict liability count.

## IV. The Second Amended Complaint remains a shotgun pleading in part.

Plaintiff's initial Complaint, First Amended Complaint, and attempted Second Amended Complaint (which was stricken at ECF No. 38) were all shotgun pleadings. Yet despite the Court's

admonishment at the hearing on March 20, the Second Amendment Complaint retains shotgun aspects of the former complaints.

In Count IV, for example, Plaintiff raises claims against co-defendant APS while implicating Norwegian's duty of care and conduct. *See* ECF No. 60 at ¶¶ 89–90. Likewise, Plaintiff discusses Norwegian's common-carrier duty in Count V despite the claim being aimed only at John Roe. *See id.* at ¶¶ 93–94. If these claims survive, such commingling of allegations against the Defendants should be omitted from the Third Amended Complaint because they are unnecessary in counts that are not aimed at Norwegian. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015).

## CONCLUSION

As to Norwegian, this complaint should contain only a single count of strict liability for compensatory damages. All other claims should be dismissed, including the prayers for punitive damages and any remaining shotgun pleading.

Respectfully submitted,

MASE SEITZ BRIGGS, P.A.
2601 S. Bayshore Drive, Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile: (305) 377-0080

By: */s/ Jeffrey A. Caisse*
    JEFFREY A. CAISSE
    Florida Bar No.: 1011243
    jcaisse@maselaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2024, I electronically filed the foregoing document with the Clerk to the Court using CM/ECF.

*/s/ Jeffrey A. Caisse*
JEFFREY A. CAISSE