## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA - MIAMI DIVISION

| | | |
|---|---|---|
| JANE DOE, individually, | ) | **Case No. 23-CV-24236-BB** |
| | ) | |
| Plaintiff, | ) | **ELECTRONICALLY** |
| v. | ) | **FILED** |
| | ) | |
| NORWEGIAN CRUISE LINES, LTD, a | ) | |
| Bermuda Company; NORWEGIAN CRUISE | ) | |
| LINE, doing business in Florida; KHALED | ) | |
| MOHAMMED KHALED, dba event | ) | |
| promoter; ALMIGHTY PROTECTION | ) | |
| SERVICES; JOHN ROE, and individual, and | ) | |
| ROES 1 to 50, Inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS NORWEGIAN CRUISE LINE LTD'S AND NORWEGIAN CRUISE LINE'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT [ECF NO. 62]**

## A.  INTRODUCTION

Plaintiff JANE DOE, by and through her undersigned counsel hereby

opposes the second motion to dismiss brought by Defendants Norwegian Cruise

Lines, Ltd, and Norwegian Cruise Lines (collectively the "Norwegian Group")

requesting a partial dismissal of the Second Amended Complaint (the "SAC")

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and applicable

Local Rules, United States District Court for the Southern District of Florida

claiming that the SAC failed to state a negligence claim, Count I, upon which relief

can be granted against the Norwegian Group which Count should therefore be

dismissed along with the claims for punitive damages.

The SAC brings five separate causes of action against four named

defendants with two Counts specifically against Norwegian Group alleging

negligence (Count I) and strict liability (Count II).

## B.  MEMORANDUM OF LAW

### 1.  Standard of Law.

This is the second motion to dismiss brought by Norwegian Group against

Plaintiff's filed complaints.  A motion to dismiss under Rule 12(b)(6) does not test

a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a

plaintiff has properly stated a claim.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974),

*abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Brewer

v. District of Columbia*, 891 F. Supp. 2d 126, 130 (D.D.C. 2012).  To survive a

motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is

"plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007);

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The complaint "does not need

detailed factual allegations." *Id.*  As such, a court should presume that the

complaint's factual allegations are true and construe them liberally in the plaintiff's favor. *Philip Morris, Inc.*, 116 F. Supp. 2d at 135.  A court ruling on a motion to dismiss confines its review to factual allegations in the complaint, documents attached or incorporated into the complaint, and matters of which it can take judicial notice. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

When considering a motion to dismiss, a court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *True v. Robles*, 571 F.3d 412 (5th Cir. 2009).  If the complaint alleges enough facts to state a claim for relief that is plausible on its face, a court should deny the defendant's motion. *Id.*

In the SAC Plaintiff alleges suffering a sexual assault at the hands of the security while attending a music and entertainment festival located on a cruise ship promoted and managed by the defendants named in the Second Amended Complaint.

### 2.    Negligence in Conjunction with Strict Liability.

In this motion Norwegian Group argues that "Negligence claims cannot be raised in conjunction with strict liability claims when the negligence claims are premised on a failure to prevent the tort that gives rise to strict liability." *See Defendants Norwegian Cruise Lines, Ltd's, and Norwegian Cruise Line's Partial*

*Motion to Dismiss the Second Amended Complaint [ECF NO. 60]* ("Norwegian Group Opp.") at page 3.

The SAC identifies facts that support separately, the negligent acts of Norwegian Group (Count I) and strict liability by Norwegian Group (Count II). *See* SAC pages 9 - 13.  In Federal court, Rule 8(d) of the Federal Rules of Civil Procedure allows for alternative pleadings. Plaintiff brought both Counts I and II against Norwegian Group which may serve as consistent or alternative claims against Norwegian Group.  A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.  *See* FRCP 8(d)(2).  Similarly A party may state as many separate claims or defenses as it has, regardless of consistency.  *See* FRCP 8(d)(3).

The opposition filed by Norwegian Group mischaracterizes Count I of the SAC as a mix of negligence and intentional torts.  *See Norwegian Group Opp. a*t page 4. Norwegian Group claims the strict liability is inconsistent with the negligent liability of Norwegian Group.  However, the SAC goes into detail to differentiate between the negligence claims and strict liability claims against Norwegian Group. The Norwegian Group, as a common carrier, owed a duty of the highest degree of care to its passengers for a safe and sound passage. These duties included the duty to vet, properly train and supervise its security personnel.  The

Norwegian Group also had a duty to warn its passengers of any propensities to commit a sexual assault.  The Hip Hop cruise event also served alcohol and provided security services.  Norwegian Group used an outside security service, Almighty Protection Service, to add security personnel on the cruise.  The outside security service was an agent of the Norwegian Group.  *See* SAC at paragraphs 55 - 57.  The negligent claims made against the Norwegian Group go to the breach of its duties owed to its passengers.  *Id.* at paragraphs 41 - 44. The Norwegian Group breached all of its duties owed to passengers and this breach was the proximate cause for the sexual assault of Plaintiff.  But for Norwegian Group's failure to properly vet the security guard, properly train the security guard, property supervise the security guard, and failure to warn its passengers of any known propensities of the security guard to commit a sexual assault, the harm to Plaintiff would not have occurred.

### 3.   Count I Identifies Foreseeability.

Norwegian Group argues that there are no allegations to suggest that Norwegian Group had a reason to know that Plaintiff would be attacked. *Norwegian Group Opp. a*t page 4.  However, Norwegian Group was a common carrier providing a party cruise that included music venues of Hip Hop concerts and varying entertainment in a party atmosphere with liquor available for passengers and for fun and enjoyment.  *See* SAC at paragraph 47.  The SAC identifies that the Norwegian Group, as operators of the cruise, was to maintain the

highest degree of care to its passengers and were required to exercise the utmost safety for its passengers.  *See* SAC at paragraph 48.  This duty included the responsibility of providing security during the Summer Fest Cruise.  The responsibility of security was not the type of duty Norwegian Group could make any other party responsible for.  Security is a nondelegable duty that Norwegian Group was responsible for.  *Id.*

It is well established that a cruise ship operator owes its passengers "the duty of exercising reasonable care under the circumstances of each case." *Torres v. Carnival Corp.*, 635 F. App'x 595, 600–01 (11th Cir. 2015).  The safety of a cruise vessel is so well established that the Congress of the United States held hearings regarding cruise line safety and the government eventually passed the Cruise Vessel Security and Safety Act of 2010 (the "CVSSA").  *See* Public Law 111-207. Substantial efforts have been made to establish public safety laws to protect the safety of passengers of cruise ships.  Pursuant to the CVSSA the Federal Bureau of Investigation, the U.S. Coast Guard, and the Maritime Administration cooperatively established model training standards covering crime prevention, detection, evidence preservation, and reporting of criminal activities in the international maritime environment.  The preceding was established for the increasing need to protect cruise passengers.  The safety of passengers is a foreseeable duty due to the higher responsibility the Norwegian Group had as the common carrier.  *See* SAC at paragraph 48.

6

Given that security was not a delegable duty, Norwegian Group had a duty to properly vet their security services.  This included vetting each security guard, properly training each security guard, supervising each security guard and confirming each individual to be a good hire for the position.  *Id.*  Norwegian further had a duty to warn cruise passengers of known propensities for sexual assault by any of its security personnel.  *See* SAC at paragraph 85.  The security force was clearly identified and stood out from other crew and passengers given their unique style of dress required for the position.  *See* Sac at paragraph 45.  The past experiences by the Norwegian Group along with prior sexual assaults in the cruise industry combined with past government actions to facilitate cruise safety made the act of a sexual assault by its improperly vetted security guard foreseeable.  The foreseeability is even more clear taking into account that Almighty Protection Services had information that the security guard had a propensity to commit sexual assault.  The security of the passengers is not a delegable duty that Norwegian Group can abdicate responsibility for.  Norwegian Group was responsible for providing security for the cruise passengers and accomplished that duty by employing security to handle such duties.  Norwegian Group also had a duty to warn the passengers of potentially dangerous conditions that the security was not properly trained, vetted, supervised or warn he had a propensity to harm passengers.  The supervisor, Sarge, was aware that John Roe had a propensity to commit sexual assault.  *See* SAC at paragraph 85.

7

The security guard exercised authority of trust over the passengers and attendees to the cruise festival.  The Restatement describes: "A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless . . . the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation."  Restatement (Second) of Agency § 219(2)(d).  This definition encompasses two closely-related theories of liability: apparent authority and aided-by-agency relation.  The SAC describes the situation of Plaintiff relying on security for assistance to safely return to her room.  *See SAC* at paragraph 25.  The authority a security guard held during the festival cruise was evident and influenced Plaintiff's trust.

The SAC identified that "The Summer Cruise Fest was advertised and promoted by Norwegian Group as a party with lots of drinking, fun, live music performances, comedy shows, multiple pool and other themed parties."  *See* SAC at paragraphs 11, 21 - 23.   The SAC continues that Plaintiff "booked the trip" based on the promotions made for this cruise trip made by Norwegian Group.  *See id*.  Plaintiff's negligence allegations against Norwegian Group related to the security of passengers regarding the encouragement through promotion to a vacation which Plaintiff purchased tickets in reliance of the promotions made by Norwegian Group.  But for the actions of Norwegian Group and its failure to meet its duties on

the cruise and for each passenger, Plaintiff would not have been harmed as claimed in the SAC.  *See* SAC at paragraphs 49 and 50.

**4.    Availability of Punitive Damages.**

The Norwegian Group argues that punitive damages are not applicable in this situation.  However, courts have determined that passengers' recovery options to only pecuniary damages "except in exceptional circumstances such as . . . those very rare situations of intentional wrongdoing."  *See In re Amtrak Sunset Ltd. Train Crash*, 121 F.3d 1421, 1429 (11th Cir. 1997).  The SAC identifies throughout that the actions of the security guard warranted punitive damages both for the extra level of protection the Norwegian Group should have provided on the cruise given the rowdy nature of the cruise or for the failure to warn passengers of the dangers they were in based on the propensity of security personnel to commit a sexual assault.

**5.    Shotgun Pleading Claim Not Valid.**

Norwegian Group falsely characterizes the Second Amended Complaint as a shotgun complaint mixing allegations for employment and negligence and failing to address the foreseeability for the Norwegian Group to result in liability to Plaintiff.  *See Norwegian Group Opp. a*t pages 5.  However, in the SAC the Plaintiff has brought separate counts against separate defendants and made every effort to separate out and avoid any successive counts.  The court must recognize that each of the separate counts spring from the same facts and circumstances and

this claim of a shotgun pleading is merely an attempt by the Norwegian Group to confuse similar facts and circumstances as same counts.  The SAC identifies five separate counts with elements of each count separately enumerated.  Similarly the SAC is not conclusory or vague as it clearly sets out each element of each case of action.  The claims by Norwegian Group of a shotgun pleading does not apply to the SAC.

### 6.    Right to Amend.

A plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d at 1024; *Bausch v. Stryker Corp.*, 630 F.3d at 562; *Foster v DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008); *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 & n.3 (7th Cir. 2004) (collecting cases). Rule 15(a)(2) governs when court approval is needed to amend a pleading: "The court should freely give leave [to amend] when justice so requires." *See generally Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) (reversing denial of leave to amend by citing to Rule 15(a)(2)'s mandate to freely give leave to amend and stating "this mandate is to be heeded").

When a district court denies a plaintiff such an opportunity to amend, its decision will be reviewed rigorously on appeal. [**13]  In *Barry Aviation*, giving leave to amend freely is "especially advisable when such permission is sought after

the dismissal of the first complaint. Unless it [*520] it is certain from the face of the complaint that any amendment would be *futile* or otherwise *unwarranted*, the district court should grant leave to amend after granting a motion to dismiss." 377 F.3d at 687 (emphasis added).

The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading. This is true even though the court doubts that plaintiff will be able to overcome the defects in his initial pleading. Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim. The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim. *Id.* at 687 [**14] , quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990).

Applying the liberal standard for amending pleadings, especially in the early stages of a lawsuit, is the best way to ensure that cases will be decided justly and on [**15] their merits. *See Foman*, 371 U.S. at 181-82, citing Fed. R. Civ. P. 1 (Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."). Consistent with that approach, courts have repeatedly applied that

11

same liberal policy of amendment when reviewing district court decisions on post-judgment motions for leave to amend. *Bausch*, 630 F.3d at 562; Foster, 545 F.3d at 584-85; *Camp*, 67 F.3d at 1290. Courts have reversed district court decisions that provide no explanation for why they denied amendment. *See Foster*, 545 F.3d at 584-85 (vacating denial of post-judgment relief made without explanation); *accord, Foman*, 371 U.S. at 182.  Similarly, courts have affirmed decisions to grant post-judgment leave to amend when [**18]  there was no reason the amendment should otherwise have been denied. *See Camp*, 67 F.3d at 1289-90. Finally, we have reversed a decision denying post- [*522]  judgment amendment when the reason given by the district court for denying the amendment--futility of amendment--was not supported by the record. *See Bausch*, 630 F.3d at 562.

## C.  CONCLUSION

The SAC states claims on which relief can be granted, the Court should deny the Norwegian Group motion and retain the case on the Court's docket as fully addressed in the SAC.

In the alternative, should this Court grant dismissal based on the Norwegian Group argument, Plaintiff should be granted leave to amend to correct any alleged deficiencies in the SAC. Plaintiff should be provided the opportunity to refile an amended complain to address any deficiencies this court identifies.

Dated:  April 26, 2024

Respectfully Submitted,

**_/s/ Reginald D. Hicks, Esq._ (FL Bar No. 071464)**
Reginald D. Hicks, P.A.
633 S. Federal Hwy., Suite 200B
Fort Lauderdale, FL 33301
Telephone: 954-546-0013
Facsimile: 954-546-0014
legal@hicksmlg.com


Respectfully Submitted,

**_/s/ Alex C. Park, Esq._ (CA Bar No. 197781)**
Alex C. Park
LAW OFFICES OF ALEX C. PARK
10080 N. Wolfe Road, Suite SW3262
Cupertino, CA 95014
Telephone: 408-246-1515
alexcpark@hotmail.com

Respectfully Submitted,

**_/s/ Carlyle G. Varlack, Esq._ (CA Bar No. 147641)**
Carlyle Varlack
Law Offices of Carlyle Varlack
1999 S. Bascom Avenue, Suite 700, Campbell, CA 95008
Telephone:  408-295-0893
Facsimile: 408-246-2989
carlylevarlack@hotmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 26th day of April, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to registered parties.

***<u>/s/ Reginald D. Hicks, Esq.</u>* <u>(FL Bar No. 071464)</u>**
Reginald D. Hicks, P.A.
633 S. Federal Hwy., Suite 200B
Fort Lauderdale, FL 33301
Telephone: 954-546-0013
Facsimile: 954-546-0014
legal@hicksmlg.com