UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-24236-BLOOM/Torres

JANE DOE, individually,

    Plaintiff,

v.

NORWEGIAN CRUISE LINES, LTD, a Bermuda
Company; NORWEGIAN CRUISE LINE, doing business
in Florida; ALMIGHTY PROTECTION
SERVICES, and JOHN ROE, an individual,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Almighty Protection Services' ("APS") Motion to Dismiss Plaintiff's Second Amended Complaint With Prejudice ("Motion"). ECF No. [61]. Plaintiff Jane Doe ("Doe") filed a Response in Opposition to the Motion ("Response"), ECF No. [63]. The Court has reviewed the Motion, the Response, the record in this case, and is otherwise fully advised. For the reasons set forth below, APS's Motion is granted.

**I.  BACKGROUND**

On November 5, 2023, Doe filed her Complaint, *see* ECF No. [1], and then her First Amended Complaint ("FAC") against Defendant APS and others. ECF No. [24]. APS responded by filing a motion to dismiss Doe's FAC, ECF No. [34]. On March 20, 2024, a hearing was held before this Court, argument was presented, and the Court thereafter granted APS's motion to dismiss Doe's FAC as a "shotgun pleading." ECF No. [59]. Because the Court concluded there was a viable cause of action that could be alleged against APS, it dismissed the FAC without prejudice, and permitted Doe the opportunity to file a second amended complaint. *Id.* at 30–31.

Accordingly, Doe filed her Second Amended Complaint ("SAC"). ECF No. [60]. Doe alleges that she was sexually assaulted by John Roe ("Roe"), a security guard employed by APS, onboard a cruise ship owned and operated by Norwegian Cruise Lines, LTD ("Norwegian") and Norwegian Cruise Line ("NCL") sometime between July 2, 2023, and July 5, 2023. *Id.* ¶¶ 9–15, 25–30. Doe alleges that APS is a business that provides security services and did so for this cruise event. *Id.* ¶ 4. In Counts 3 and 4, Doe alleges that APS is liable for various injuries she sustained as a result of Roe's conduct under theories of "Negligence" and "Negligent Hiring, Supervision," respectively. *Id.* ¶¶ 65–76, 77–91.

On April 2, 2024, APS filed its Motion to Dismiss ("Motion") Doe's SAC. ECF No. [61]. APS argues that Doe's SAC fails to establish subject-matter jurisdiction and is effectively a shotgun pleading because both Counts 3 and 4 against APS "conflated several theories of liability." ECF No. [61] at 6, 8. Doe responds that APS waived its ability to challenge subject-matter jurisdiction by failing to raise the issue in its prior motion to dismiss. ECF No. [63] at 4. Responding to APS's argument that Counts 3 and 4 conflate several theories of liability, Doe points out that the Federal Rules of Civil Procedure allow a party to state two or more statements of a claim alternatively and within a single count, regardless of their consistency. *Id.* at 8. In her Response, Doe requests leave to amend any deficiencies in her SAC should this Court grant APS's Motion. *Id.* at 11–13.

## II.  LEGAL STANDARD

### A.  Subject-Matter Jurisdiction

The party attempting to invoke the federal court's jurisdiction bears the burden of establishing that jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936); *Tabraue v. Scottsdale Ins. Co.*, Case No. 24-cv-20525, 2024 WL 1249965, at *2 (S.D. Fla. Mar. 25, 2024). The Eleventh Circuit has held that "[t]he law of this circuit . . . is that 'where

a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged in the complaint satisfy the jurisdictional requirements of the statute.'" *Mojica Morales v. Acting Sec'y, United States Dep't of Homeland Sec.*, No. 21-10835, 2022 WL 73761 (11th Cir. Jan. 7, 2022) (quoting *Arce v. Garcia*, 434 F.3d 1254, 1257 n.8 (11th Cir. 2006)).

Federal courts "have original jurisdiction, exclusive of the courts of the States," in "any civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). "Personal-injury claims by cruise ship passengers complaining of injuries suffered at sea, are within the admiralty jurisdiction of the district courts." *Caron v. NCL (Bah.), Ltd.*, 910 F.3d 1359, 1365 (11th Cir. 2018) (citation omitted). "Maritime law governs claims arising from alleged tort actions aboard ships sailing in navigable waters." *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (citation omitted).

This Court has original jurisdiction over all civil actions in which the matter in controversy exceeds $75,000.00 in value and is between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). Further, this Court has jurisdiction over civil actions between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(3). This type of jurisdiction (what we call diversity jurisdiction) requires *complete* diversity: Every plaintiff must be diverse from every defendant. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). If complete diversity is lacking, a federal court does not have subject-matter jurisdiction over an action pursuant to 28 U.S.C. § 1332. *Id.*

"[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1). It has been long established that "[c]itizenship, not residence, is the

key fact that must be alleged in a complaint to establish diversity for a natural person." *Kantrow v. Celebrity Cruises Inc.*, 533 F. Supp. 3d 1203, 1214 (S.D. Fla. Apr. 1, 2021) (citation omitted). "Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction." *Travaglio v. American Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) (citation omitted). "A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom . . . ." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (citation omitted).

The Federal Rules of Civil Procedure provide that "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Courts are obligated to consider *sua sponte* issues concerning subject-matter jurisdiction. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Thus, subject-matter jurisdiction can never be waived or forfeited. *Id.* Objections to subject-matter jurisdiction may be "resurrected at any point in the litigation, and a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety." *Id.*

### B. Failure to State a Claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Although a complaint need not state "detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding that Rule 8 demands more than "an unadorned, the

4

defendant-unlawfully-harmed-me accusation"). On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to [the] plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

### C. Shotgun Pleading

The Federal Rules of Civil Procedure require a pleading to contain a "short and plain statement of the claim" showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). In *Weiland*, the Eleventh Circuit identified four common shotgun pleading archetypes: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts," (2) a complaint guilty of "being replete with conclusory, vague, and immaterial facts[,]" (3) a complaint that commits the sin of "not separating into a different count each cause of action or claim for relief," and (4) a complaint that asserts "multiple claims against multiple defendants without identifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1321–23. The "unifying characteristic" of shotgun pleadings is that they fail "to give defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* The Eleventh Circuit has repeatedly and unequivocally condemned shotgun pleadings as a waste of judicial resources. *Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018); *Finch v. Carnival Corp.*, 701 F. Supp. 3d 1272, 1279 (S.D. Fla. Nov. 6, 2023).

### D. Leave to Amend

The Federal Rules of Civil Procedure allow a party to amend its pleading with the court's leave, and state that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The grant or denial of an opportunity to amend is within the discretion of the District

Court." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to amend should be given freely "in the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.* Although leave should be given freely, "the court may deny leave to amend on numerous grounds, including the futility of amendment." *Patel v. Georgia Dep't. BHDD*, 485 F. App'x. 982 (11th Cir. 2012) (citing *Maynard v. Bd. of Regents of Div. of Univs. of Florida Dept. of Educ. ex rel. Univ. of S. Florida*, 342 F.3d 1281, 1287 (11th Cir.2003)). "Futility justifies the denial of leave to amend where the complaint, as amended, would still be subject to dismissal." *Id.* (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir.1999)).

**III.   DISCUSSION**

APS contends that Doe's SAC fails to establish subject-matter jurisdiction and improperly conflates various theories of liability within Counts 3 and 4. ECF No. [61]. Doe responds that APS waived the ability to challenge subject-matter jurisdiction, and the Federal Rules allow her to state alternative statements of a claim in a single count. ECF No. [63].

### A. Subject-Matter Jurisdiction

Doe's contention that APS waived the ability to challenge subject-matter jurisdiction is incorrect. ECF No. [63] at 3–4. An objection to subject-matter jurisdiction can never be waived or forfeited. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Even if issues concerning subject-matter jurisdiction are not raised by the parties, courts are obligated to consider those issues *sua sponte*. *Gonzalez*, 565 U.S. at 141. Thus, APS may challenge whether Doe's SAC adequately establishes subject-matter jurisdiction, and this Court has the responsibility to determine if subject-matter jurisdiction exists.

### i. Admiralty Jurisdiction Exists

Doe's SAC sufficiently establishes that this Court has subject-matter jurisdiction. Pursuant to 28 U.S.C. § 1333(1), this Court has jurisdiction over cases of "admiralty" or "maritime" jurisdiction. 28 U.S.C. § 1331(1). "Personal-injury claims by cruise ship passengers, complaining of injuries suffered at sea, are within the admiralty jurisdiction of the district courts." *Caron v. NCL (Bah.), Ltd.*, 910 F.3d 1359, 1365 (11th Cir. 2018) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587-88 (1991). Additionally, "[m]aritime law governs claims arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019); *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320–21 (11th Cir. 1989).

As APS concedes, tort claims are properly within admiralty jurisdiction if the (1) incident occurred on navigable waters or was caused by a vessel on navigable waters, and (2) if there is a connection between the incident and maritime activity. *Caron,* 910 F.3d at 1365 (citing *Broughton v. Fla. Int'l Underwriters, Inc.*, 139 F.3d 861, 865 (11th Cir. 2018)). Moreover, in *Doe v Celebrity Cruises, Inc.*, 394 F.3d 891 (11th Cir. 2004), the Eleventh Circuit held "a party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must satisfy conditions both of location and of connection with maritime activity. Therefore, this Court must determine if two conditions exist: (1) location and (2) connection with maritime activity." *Id*. at 900 (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)).

In *Doe v. Celebrity*, a case also concerning a sexual assault against a passenger that occurred aboard a cruise line vessel, the Eleventh Circuit found the necessary "connection test" to establish admiralty jurisdiction was satisfied as "a crew member's sexual assault on a passenger 'obviously has a potentially disruptive impact on maritime commerce'" as do the interactions between the crew and passengers. *Id*. at 900. "[T]he cruise line industry is maritime commerce"

and if passengers become fearful of sexual battery aboard cruises, that fear would necessarily cause the industry to suffer. *Id*. With respect to location, the court held when a plaintiff is injured aboard a ship upon navigable waters, "the legal rights and liabilities arising from that conduct [are] therefore within the full reach of the admiralty jurisdiction." *Id*.

Here, Doe alleges in her SAC that she was a passenger aboard a Norwegian cruise that took place between July 2, 2023, and July 5, 2023. ECF No. [60] ¶ 9. Doe alleges that APS provided security services on that cruise, and she was sexually assaulted by Roe, an employee of APS while she was aboard the vessel. ECF No. [60] ¶¶ 12, 27–29. Doe's SAC further alleges she suffered various personal injuries as a result of Roe's conduct, and that APS is liable to Doe for the tort claims arising from Roe's actions. *Id.* ¶¶ 76, 91. Taken as true and drawing all inferences in favor of Doe as non-movant, those allegations are sufficient to establish subject-matter jurisdiction through admiralty jurisdiction. APS also contends that Doe's SAC fails to plead an admiralty claim because, although the SAC "references maritime law[,] [it] fails to cite under which provision it relies." ECF No. [61] at 2. APS provides no authority to support its contention that failure to cite to a statute conferring jurisdiction results in a litigant's failure in establishing subject-matter jurisdiction. On the contrary, "[t]he law of this circuit . . . is that 'where a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged in the complaint satisfies the jurisdictional requirements of the statute." *Mojica Morales v. Acting Sec'y, United States Dep't of Homeland Sec.*, No. 21-10835, 2022 WL 73761, at *3 (11th Cir. 2022) (quoting *Arce v. Garcia*, 434 F.3d 1254, 1257 n.8 (11th Cir. 2006)). Here, although Doe's SAC fails to cite the specific jurisdictional statute upon which she relies, the facts alleged satisfy

the jurisdictional requirements of 28 U.S.C. § 1333(1) and establish admiralty jurisdiction over this action.[1]

### B. Shotgun Pleading

APS argues in its Motion that Doe "conflated several theories of liability" in Counts 3 and 4. ECF No. [61] at 6, 8. Doe counters by asserting that the Federal Rules allow her to plead alternative statements of a claim, even within a single count, and regardless of consistency. ECF No. [63] at 8. For the reasons discussed below, Counts 3 and 4 constitute shotguns pleadings requiring dismissal.

#### i. Count 3: Negligence

APS argues that Count 3 improperly "re-alleges and incorporates by reference 'all of the allegations contained in the paragraphs above'" which incorporates Counts 1 and 2 of the SAC. ECF No. [61] at 5. APS also contends Count 3 is improperly pled because it asserts a claim for negligence, yet "conflate[s] various theories of liability." ECF No. [61] at 6. APS further points out that "[Doe] alleges that APS is liable for John Roe's actions under the theory of respondeat superior, vicarious liability, and failure to train, vet and supervise John Roe." *Id*. at 6. Doe asserts that her claims are permissible and consistent with the Federal Rules of Civil Procedure. ECF No. [63] at 8.

Count 3 of Doe's Complaint constitutes a shotgun pleading, specifically the first and third common type as described in *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313 (11th Cir. 2015). *Id*. at 1321-22. The first common type of shotgun pleading is a complaint that contains "multiple counts where each count adopts the allegations of all preceding counts, causing each

---

[1] APS moved to strike Doe's demand for a jury trial. ECF No. [61] at 4. The Court need not address whether Doe's demand for a trial by jury is proper in light of the Court's conclusion that the claims against APS are due to be dismissed with prejudice.

9

successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id*. The third common type of shotgun pleading is the type "that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.*

Here, Count 3 "commits the sin of not separating into a different count each cause of action or claim for relief." Count 3 of Doe's Complaint, titled "Negligence against APS," describes various alleged breaches of APS's duty to protect Doe from the injury she suffered. ECF No. [60]. Doe alleges that (1) APS "owed a duty to secure the premises and personnel by patrolling, monitoring surveillance equipment and access points," (2) a "duty to investigate security breach, incidents, and other alarming behavior," (3) a "duty of reasonable care to keep passengers . . . safe and out of harms way," and (4) a "duty to warn passengers that John Roe had a propensity for committing sexual assault." *Id.* ¶¶ 68–69, 72, 75.

Count 3 also alleges that APS is vicariously liable for the harms suffered by Roe's actions, under a theory of respondeat superior. ECF No. [60] ¶¶ 16, 74. Vicarious liability "allows 'an otherwise non-faulty employer' to be held liable 'for the negligent acts of [its] employee acting within the scope of employment.'" *Yusko v. NCL (Bah.), Ltd.*, 4 F.4th 1164, 1169 (11th Cir. 2021) (quoting *Langfitt v. Fed. Marine Terminals, Inc.*, 647 F.3d 1116, 1121 (11th Cir. 2011)). Further, several other alleged breaches by APS in Count 3 contain elements of other distinct causes of action, such as negligent training, negligent hiring, and negligent supervision. ECF No. [60] ¶¶ 72, 75. Negligent training occurs when (1) a defendant was negligent in the implementation or operation of a training program; and (2) that negligence causes the plaintiff's injury. *Anders v. Carnival Corporation*, Case No. 23-21367, 2023 WL 4252426, at *4 (S.D. Fla. Jun. 29, 2023) (quoting *Diaz v. Carnival Corp.*, 555 F. Supp. 3d 1302, 1310 (S.D. Fla. 2021)). "Negligent hiring occurs when, 'prior to the time the employee is actually hired, the employer knew or should have

known of the employee's unfitness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background.'" *Finch v. Carnival Corporation*, 701 F. Supp. 1272, 1282 (S.D. Fla. Nov. 6, 2023) (quotations omitted). "Negligent supervision occurs when 'during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment.'" *Cruz v. Advance Stores Co.*, 842 F. Supp. 2d 1356, 1359 (S.D. Fla. Feb. 10, 2012) (citation omitted).

Count 3 of Doe's Complaint is also an example of the first common type of shotgun pleading which "adopts the allegations of all preceding counts, causing each successive count to carry all that came before." *Weiland*, 792 F.3d at 1321. In Count 3, Doe's "re-alleges and incorporates by reference" all of the allegations contained in Counts 1 and 2 in regard to Norwegian and NCL to be included within Count 3. ECF No. [60] ¶ 65. This is problematic, since Doe's claim that Norwegian and NCL are strictly liable for Roe's conduct is now commingled into Count 3, along with the various other causes of action Doe has alleged. *Id*. ¶¶ 51–64. Accordingly, the Court finds that Count 3 constitutes an impermissible shotgun pleading requiring dismissal.

### ii. Count 4: Negligent Hiring, Supervision

APS argues that Count 4 again realleges all proceeding paragraphs into Count 4, duplicates the allegations of Count 3, and fails to properly allege the necessary elements of the causes of action brought forth, namely negligent hiring and negligent supervision. ECF No. [61] at 6, 8. Doe contends that her claims are pled in a manner consistent with and permissible under the Federal Rules. ECF No [63] at 8.

Count 4 is primarily an example of the third common type of shotgun pleading, as it "commits the sin of not separating into a different count each cause of action or claim for relief."

*Weiland*, 792 F.3d at 1322. APS correctly points out that Count 4 conflates various theories liability, most notably negligent hiring and negligent supervision. As discussed above, negligent hiring and negligent supervision are distinct causes of action with different elements. Doe's SAC improperly combines negligent hiring and negligent supervision, two distinct causes of action with distinct elements, into a single count. ECF No. [60] ¶ 77. Courts have routinely dismissed complaints that combine some variation of these causes of action into a single count as a shotgun pleading. *See Finch*, 701 F. Supp. at 1284-85 (dismissing a count for failing to separately plead claims for negligent supervision, negligent training, and negligent hiring); *Reed v. Royal Caribbean Cruises, Ltd.*, Case No. 19-24668-CIV, 2021 WL 2592914, at *9 (S.D. Fla. Apr. 21, 2021) (finding dismissal is warranted as negligent supervision and negligent training are separate claims which must be plead separately); *Burgess v. Royal Caribbean Cruises Ltd.*, Case No: 20-CV-20687, 2020 WL 13349026, at *2 (S.D. Fla. Oct. 9, 2020) (dismissing claims titled "Negligently Hiring, Selection, Retention, Monitoring, and Training" as impermissible shotgun pleadings because "[t]hese counts combine different causes of action that have distinct elements of law and require different findings.").

Moreover, Doe alleges multiple times that APS had a duty to properly train Roe, despite not pleading that APS is liable for negligent training. ECF No. [60] ¶¶ 82, 90. A claim for negligent training requires a plaintiff to allege that a defendant "'was negligent in the implementation or operation of the training program and the negligence cause[d] [his] injury.'" *Anders v. Carnival Corporation*, Case No. 23-21367-CIV, 2023 WL 4252426, at *4 (S.D. Fla. Jun. 29, 2023) (quoting *Diaz v. Carnival Corp.*, 555 F. Supp. 3d 1302, 1310 (S.D. Fla. 2021)). Doe makes that same error by alleging that APS negligently retained Roe. ECF No. [60] ¶ 82, 91. Liability for negligent retention, unlike liability for negligent hiring, "occurs after employment begins, where the

employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge, or reassignment." *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1148 (S.D. Fla. Feb. 4, 2016) (quotations omitted). Negligent training and negligent retention are distinct causes of action, requiring separate findings of fact and thus must be pled separately from a claim of negligent hiring and negligent supervision. *See Reed,* 2021 WL 2592914, at *9; *Burgess*, 2020 WL 13349026, at *2. Moreover, Doe again pleads within Count 4 that "APS is vicariously liable for John Roe's conduct." ECF No. [60] ¶ 87. Vicarious liability is another distinct theory of liability, which must also be pled separately. Further, Doe re-alleges and incorporates by reference all allegations contained in each of the paragraphs preceding Count 4. ECF No. [60] ¶ 77. Thus, Count 4 is also an example of the first type of shotgun pleading, in which a count "adopts the allegations of all preceding counts, causing each successive count to carry all that came before." *Weiland*, 792 F.3d at 1321. Accordingly, Count 4 must also be dismissed as an impermissible shotgun pleading.[3]

### C. Leave To Amend

In her Response, Doe asked this Court for leave to amend her SAC to correct any deficiencies should this Court grant APS's Motion. ECF No. [63] at 13. Because this Court finds Doe's SAC remains an impermissible shotgun pleading which has failed to correct, leave to amend is unwarranted and Doe's request is denied.

"The grant or denial of an opportunity to amend is within the discretion of the district court." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to amend should be given freely "[i]n

---

[3] Doe states in her Response that she "separately set out the counts of the [complaint] so as to identify the individual liability of each defendant." ECF No. [63] at 12. This is true, as Doe's FAC committed the sin of "assert[ing] multiple claims against multiple defendants without identifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *See* ECF *Weiland*, 762 F.3d 1313. However, there are multiple types of shotgun pleadings, and Counts 3 and 4 remain a shotgun pleading.

the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.*

Doe relies on a case from outside of this district, *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682 (7th Cir. 2004) to argue that she should be granted leave to amend her SAC. In *Barry Aviation*, the Seventh Circuit reversed the ruling of the district court, which denied the plaintiff's request for leave to amend its complaint on the grounds that the statute of limitations had expired pursuant to 18 U.S.C. § 1961 and 42 U.S.C. § 1983, rendering any proposed amendment futile. *Id.* at 686. The Seventh Circuit relied on the doctrine of equitable estoppel, which "suspends the running of the statute of limitations during any period in which the defendant took active steps to prevent the plaintiff from suing," in finding that amendment would not be futile. *Id.* at 689. The court determined that the plaintiff's complaint set forth facts that "could establish that the defendants 'conceal[ed] evidence from the plaintiff that [it] needed in order to determine that [it] had a claim.'" *Id.* The court held that plaintiff in *Barry Aviation* could rely on equitable estoppel which suspended the running of the relevant statute of limitations because the defendant actively prevented the plaintiff from learning of its misrepresentations by concealing evidence and falsifying documents. *Id.* at 690. Thus, the court determined that the plaintiff could state a claim upon which relief could be granted and leave to amend was improperly denied by the district court. *Id.*

None of the circumstances that existed in *Barry Aviation* is present here. Doe fails to explain how the reasoning in *Barry Aviation* applies to this case. Rather, Doe seemingly relies on one legal proposition articulated in *Barry Aviation*, which is inapplicable. *Barry Aviation*

determined that giving leave to amend is "especially advisable when such permission is sought after the dismissal of the *first* complaint," not the "Second Complaint" as Doe suggests in her Response. *Id.* at 687 (emphasis added); ECF No. [63] at 12.

Dismissal of a shotgun pleading with prejudice for a repeated pleading defect is warranted "where the plaintiff was previously given an opportunity to amend the complaint to correct the defect but failed to so." *McDowell v. Gonzalez*, 424 F. Supp. 3d 1214, 1222 (S.D. Fla. Dec. 3, 2019). Moreover, the Eleventh Circuit has held that "[w]hen a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must *sua sponte* give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018). Moreover, a district court does not abuse its discretion when dismissing a complaint with prejudice on shotgun pleading grounds when a district court has given a litigant an opportunity to correct the shotgun pleading issues in his complaint with specific instructions on how to properly do so, and the litigant fails to fix the defects. *See Id.* at 1297. *See also Barmapov v. Amuial,* 986 F.3d 1321, 1326 (11th Cir. 2021) (concluding that the district court did not abuse its discretion by dismissing the second amended complaint with prejudice of a plaintiff who was represented by counsel because it constituted a shotgun pleading, and failed to correct the first amended complaint, which was also a shotgun pleading); *Amin v. Pepperman*, Case No: 8:23-cv-02345, 2023 WL 8018864 at *1 (M.D. Fla. Nov. 20, 2023) (dismissing *pro se* plaintiffs' second amended complaint with prejudice because it was a shotgun pleading, and failed to correct the defects of the prior complaints, also shotgun pleadings).

This Court has already given Doe an opportunity to amend her prior complaint after determining her FAC constituted a shotgun pleading. Doe has filed three complaints and has

sought leave to amend from this Court twice. At the hearing on APS's motion to dismiss the FAC, held on March 20, 2024, this Court found "that the . . . First Amended Complaint is a shotgun pleading," but "believe[d] that there is a viable cause of action that can be alleged against Defendant Almighty Protection Services," and accordingly dismissed Doe's FAC without prejudice, allowing Doe an opportunity to correct the shotgun pleading issues. ECF No. [59] at 1-3; 21-24; 30–31; ECF No. [56]. This Court provided Doe with adequate notice and instruction regarding the defects in her pleading when it held that Doe's FAC "clearly violates the Eleventh Circuit's very firm decisions with regard to the four types of shotgun pleadings, and this is clearly a violation of the first and then third." ECF No. [59] at 20:14–19. This Court further put Doe on notice by stating "I do recognize that this Amended Complaint commits the sin of not separating into different counts each cause of action or claim for relief." *Id*. at 22: 6–10. Most dispositive however, are this Court's statements to Doe during the motion hearing on March 20, 2024, in which it was made clear that the next complaint must resolve the Court's concerns:

> What is clear to the Court [] is that you have, as a matter of right, amended your Complaint to file a First Amended Complaint. You have now been before this Court and have asked for leave to amend. You have even attached a Second Amended Complaint that you sought to file without leave of court. And as has been made known to you, that Second Amended Complaint does not resolve any of the Court's concerns, and certainly it is in the nature of a shotgun pleading. As such, the new Second Amended Complaint must comply with the Court's directive. Otherwise, the Court will grant a motion to dismiss with prejudice, without leave to amend. Because giving you now a fourth time, to the extent that the next one is not appropriate, would certainly show the Court that it would be futile on the Plaintiff's part to be able to plead sufficient causes of action against the remaining Defendants.

*Id*. at 37: 4–21.

"Shotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court, and court's para-judicial personal and resources. Moreover,

justice is delayed for the litigants who are "'standing in line,' waiting for their cases to be heard." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356–57 (11th Cir. 2018) (citing *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997)). There is no rule "requiring district courts to endure endless shotgun pleadings." *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1297 (11th Cir. 2018). Despite this Court's instructions, Doe's failed to provide a "short and plain statement" giving APS fair notice of the claims against it and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Weiland*, 792 F.3d at 1323. For the reasons stated above, Doe's SAC is another shotgun pleading and fails to resolve the concerns of this Court. Accordingly, APS's Motion to Dismiss is granted, and Doe's SAC is dismissed with prejudice.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint**, ECF No. [61]**, is **GRANTED.**

2. Counts 3 and 4 of the Second Amended Complaint against Almighty Protection Services, **ECF No. [61]**, are **DISMISSED WITH PREJUDICE.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 13, 2024.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record