UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-24236-BLOOM/Torres

JANE DOE,

    Plaintiff,

v.

NORWEGIAN CRUISE LINES, LTD, and
NORWEGIAN CRUISE LINE,

    Defendants.
_____/

**ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendant Norwegian Cruise Lines, Ltd., and Norwegian Cruise Line's (together, "Norwegian") Partial Motion to Dismiss the Second Amended Complaint ("Motion"), ECF No. [62]. Plaintiff Jane Doe ("Doe") filed a Response to Norwegian's Motion ("Response"), ECF No. [64], and Defendant filed a Reply ("Reply"), ECF No. [65]. The Court has reviewed the Motion, the supporting and opposing submissions, the record in this case, and is otherwise fully advised. For the reasons that follow, Defendant's Motion is granted.

**I.    BACKGROUND**

In her Second Amended Complaint, Doe alleges that she was a passenger on a "Summer Cruise Fest" operated by Norwegian over the weekend of July 2, 2023, to July 5, 2023. ECF No. [60] ¶ 19. Norwegian hired Defendant Almighty Protection Services ("APS") to provide security for the weekend. *Id.* ¶ 12. Defendant John Roe ("Roe") was employed as a security guard by APS. *Id.* ¶ 13. On July 3, 2023, Doe was feeling very intoxicated and became lost and confused on the way to find her cabin. *Id.* ¶ 24. Doe was approached by Roe, who offered help to get Doe to her cabin. *Id.* ¶ 25. Roe then took Doe to a cabin that was not hers and proceeded to sexually assault

her. *Id.* ¶ 27. As a result, Doe suffers from severe depression and constant anxiety that requires psychological counseling. *Id.* ¶ 36. Doe also experienced pain, suffering, mental anguish, and physical injury as a result of this assault, as well as unnecessary medical care and expenses, lost wages, lost future wages, and loss of future earning capacity. *Id.* ¶ 50.

Doe's Second Amended Complaint alleges a negligence claim (Count 1) and a strict liability claim (Count 2) against Norwegian. Both Counts seek punitive damages.

Norwegian filed its Motion with respect to Count 1 and the claims for punitive damages. Norwegian contends Count 1 must be dismissed because it is a negligence claim premised on the same tort—Roe assaulting Plaintiff — as the strict liability claim in Count 2. Norwegian accordingly argues Count 1 must be dismissed because it is premised on a failure to prevent the tort that gives rise to strict liability. Alternatively, Norwegian argues Count 1 fails to plausibly allege it breached any duty it owed Doe because the assault was not foreseeable.

Doe responds that Counts 1 and 2 are properly pled in the alternative. Doe contends Norwegian mischaracterizes Count 1 of the Second Amended Complaint, arguing it is plausible because Norwegian's alleged negligence foreseeably led to Plaintiff's assault. ECF [64] at 5. Doe also argues that punitive damages should be available in exceptional circumstances, such as this case, and the shotgun pleading argument is not valid. *Id.* at 9.

Norwegian replies by reiterating its argument that Doe cannot raise negligence theories based on an intentional tort for which it would also be strictly liable as well as arguing Doe's foreseeability argument is at "too high a level" and "ignores too many variables" to be valid. ECF [65] at 3. Further, Norwegian contends it cannot be liable for punitive damages for the alleged intentional torts of Roe absent authorization or ratification of his alleged conduct. *Id.* at 4.

## II.   LEGAL STANDARD

### A. Motion to Dismiss

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's factual allegations as true, construing them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2006)). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Twombly*, 550 U.S. at 555.

### B. Shotgun Pleading

A "shotgun pleading[]" is a complaint that violates either Rule 8(a)(2) or 10(b), or both. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit outlined a non-exhaustive list of four common types of shotgun pleadings:

> (1) "a complaint containing multiple counts where each count adopts the allegations of all previous counts where each count adopts the allegations of all previous counts," (2) a complaint full of "conclusory, vague, and immaterial facts," (3) a complaint that does not separate "into a different count each claim [] for relief," and (4) "a complaint that asserts multiple claims against multiple defendants without identifying which defendants are responsible for which acts or omissions."

*Anders v. Carnival Corporation*, No. 23-cv-21367, 2023 WL 4252426, at *3 (S.D. Fla. June 29, 2023) (quoting *Weiland*, 792 F.3d at 1321-23). The unifying characteristic of all shotgun pleadings

3

is that they somehow fail to give sufficient notice to the defendants of the claims against them. *Id.* A pleading "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" would be considered shotgun pleading. *Id.*

### C. Punitive Damages

"The Eleventh Circuit has held that punitive damages are not available for negligence claims in admiralty cases." *Doe v. Celebrity Cruises*, 145 F. Supp. 2d 1337, 1347 (S.D. Fla. Feb. 26, 2001). Accordingly, a plaintiff is typically precluded from recovering "punitive damages in personal injury actions brought under the general maritime law." *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1429 (11th Cir. 1997). However, "a plaintiff may recover punitive damages under general maritime law, consistent with the common-law rule, where the plaintiff's injury was due to the defendant's 'wanton, willful, or outrageous conduct.'" *Garcia v. Carnival Corp.*, No. 13-21628-CIV-Altonaga, 2014 WL 12531509, at *5 (S.D. Fla. Apr. 10, 2014) (quoting *Lobegeiger v. Celebrity Cruises, Inc.*, No. 11-21620-CIV, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011) (quoting *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 409 (2009) (other citations omitted)).

"To demonstrate intentional misconduct for the purposes of recovering punitive damages, plaintiffs must show that 'the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.'" *Tang v. NCL (Bahamas) Ltd.*, 472 F. Supp. 3d 1227, 1231 (S.D. Fla. July 14, 2020) (quoting *Mee Indus. v. Dow Chemical Co.*, 608 F.3d 1202, 1220 (11th Cir. 2010) (citation omitted)).

## III.   DISCUSSION

As pointed out, Norwegian seeks dismissal of Doe's negligence claim on the grounds that Doe cannot recover on a negligence theory where, as here, Doe's strict liability claim is premised on the same tort. Norwegian also moves to dismiss Plaintiff's punitive damages claim contained in both Counts because there are no allegations of intentional misconduct by Norwegian. Norwegian argues in the alternative that Count 1 must be dismissed because it fails to allege Roe's assault of Doe was foreseeable.

Doe responds that Count 1 is properly pled because negligence claims are properly alleged in the alternative alongside strict liability claims. ECF No. [64] at 3. Doe also argues the Second Amended Complaint is not a shotgun pleading and seeks leave to amend should the Court disagree. *Id*. at 12. Norwegian's Reply reiterates that Doe cannot raise a negligence claim that is premised on the same conduct as a strict liability claim.[1] ECF No. [65] at 2. Norwegian maintains punitive damages are unwarranted because Doe fails to allege Norwegian committed intentional wrongdoing and "Norwegian's shotgun pleading arguments are narrower than Doe perceives." *Id.* at 4.

### A.  Negligence Claim (Count 1)

#### i. Negligence Claim Relies on the Same Intentional Tort as the Strict Liability Claim

To state a negligence claim in a maritime-tort case, "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff

---

[1] Norwegian clarifies in its Reply that it does not seek dismissal of Count 1 on shotgun pleading grounds, although Doe "still commingles claims against Norwegian in the counts aimed at other defendants." ECF No. [65] at 4. However, should Doe file a Third Amended Complaint, Norwegian asks that the allegations within Counts 4 and 5 be omitted against it. ECF No. [65] at 4.

suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (citations omitted). "It is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care to those lawfully aboard the vessel who are not crewmembers." *Garcia v. Carnival Corp.,* No. 13-21628-CIV-Altonaga, 2014 WL 12531509, at *6 (S.D. Fla. Apr. 10, 2014) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959)).

Here, Doe claims that Norwegian had a duty to keep their passengers safe and free from harm. ECF [60] ¶ 42. Doe claims that Norwegian failed to properly vet their guards, failed to properly hire, failed to properly train and/or supervise, and failed to properly warn passengers. *Id.* ¶ 48. However, Doe's negligence claim and each duty alleged stem from the same alleged intentional actions of Roe and Norwegian. As Norwegian observes, courts in this District have found a defendant cannot be both negligently and strictly liable for the same intentional tort. *See, e.g.*, *Garcia*, 2014 WL 12531509, at *3.

*Garcia* is persuasive. In *Garcia*, the plaintiff alleged she was involved in a marital dispute before Carnival's security intervened. *Id*. at *1. After intervening, the plaintiff alleged she was sexually assaulted by Carnival employees. *Id*. She raised a claim for strict liability for the assault and battery and a negligence claim for failing to respond to the marital disagreement and failing to properly train and supervise its employees. *Id*. Garcia had not provided any evidence regarding the training or supervision of Carnival's security personnel, much less any evidence that Carnival's training or supervision was conducted in a way that could lead a reasonable trier of fact to conclude there was negligence on the part of Carnival. *Id.* at *3. The court determined that Carnival could not be found negligently liable for the same intentional tort for which they were strictly liable and prevailed in its motion for summary judgment against Garcia. *Id.* The court noted that:

> Garcia's negligence claim stemming from the actions of Carnival's security personnel (*i.e.*, failure to properly respond to a marital agreement, failure to

properly separate the couple, and failure to use an appropriate amount of force under the circumstances) is simply a recasting of Garcia's assault, battery, and sexual assault claim in Count I. Assault, battery, and sexual assault are all intentional torts. *See Doe*, 394 F.3d at 918–17 (citations omitted). Therefore, Count II is also improper to the extent it attempts to state a negligence cause of action against Carnival for the intentional torts allegedly perpetrated by its crewmembers and which encompass Garcia's claim in Count I. *Id.*

While *Garcia* was decided on a motion for summary judgment, the same rationale is applicable here. As in *Garcia*, Doe raises her negligence claim based on Norwegian's failure to prevent an intentional tort for which she claims it is strictly liable. Counts 1 and 2 are premised on the same intentional tort — Roe's assault. The Court is persuaded Count 1 fails to state a claim for this reason.[2] Accordingly, Norwegian's Motion to Dismiss Count 1 is granted.

### ii. Foreseeability

Norwegian argues in the alternative that Doe fails to allege that it was foreseeable that Roe would assault Doe.[3] ECF No. [62] at 4. Norwegian relies on *Wiegand v. Royal Caribbean Cruises*, No. 21-12506, 2023 WL 4445948, at *4 (11th Cir. 2023) for support that intentional torts and illegal acts are unforeseeable as a matter of law, and on *Fuentes v. Classica Cruise Operator, Ltd. Inc.,* 32 F.4th 1311 (11th Cir. 2022) for support that failure to sufficiently allege foreseeability is grounds for dismissal. Norwegian argues foreseeability is also necessary to establish duty. ECF No. [62] at 5. Norwegian contends Doe's only potentially relevant allegation is that "all defendants 'knew at least by July 5, 2023'" about the alleged acts, and the security officer was made aware of the assault the day after it occurred. *Id.* at 6.

---

[2] Doe's argument that Counts 1 and 2 are properly pled because they assert alternative theories of liability is unpersuasive. While Rule 8 generally permits a plaintiff "to set out 2 or more statements of a claim or defense alternatively," Doe fails to show doing so is proper where, as here, Doe pleads negligence and strict liability claims premised on the same intentional tort. Fed. R. Civ. P. 8(d)(2).

[3] Norwegian raised its argument on the foreseeability as an alternative argument that dismissal of Count 1 for negligence is warranted. As the Parties substantially briefed the argument with respect to foreseeability, the Court addresses their points.

Doe replies that the safety of passengers is a foreseeable and non-delegable duty because of the heightened responsibility Norwegian has as a common carrier. ECF No. [64] at 6. Doe points to governmental efforts — the Cruise Line Vessel Security and Safety Act of 2010 — and efforts to establish model training, evidence preservation, and "reporting criminal activities in the international maritime environment" to support her argument that the alleged assault in this case was foreseeable. *Id*.

Norwegian replies that Doe only raised a generalized theory of foreseeability and has set forth no factual allegations to support that Norwegian knew of Roe's propensity to commit a sexual assault. ECF No. [65] at 3.

The Court agrees with Norwegian. Doe's argument fails because she sets forth insufficient factual allegations in her Second Amended Complaint and does not support her argument that her allegations are sufficient with legal authority. First, Doe has not set provided any factual allegations to support her argument that the assault was foreseeable. Doe's argument that *APS* had information pertaining to Roe's propensity for violence fails to show the assault was foreseeable from *Norwegian's* perspective. Doe's more direct allegations are similarly vague and conclusory. Doe argues that the "supervisor, Sarge, was aware that John Roe had a propensity to commit sexual assault" and cites to the following allegation in her Second Amended Complaint

> When Jane Doe reported to APS regarding the sexual assault committed by John Roe, the sergeant gravely lowered his head and nodded it side to side. APS knew or should have known John Roe's propensity to misbehave.
> ECF No. [60] ¶ 85.

As an initial matter, this allegation appears within Count 4 against APS for negligent hiring and supervision, not against Norwegian with respect to Count 1 for negligence. At best this allegation indicates awareness *after* the incident occurred when Doe reported the incident. Finally, the allegation is that *APS* — not Norwegian — should have known about Roe's "propensity to

8

misbehave" and the Second Amended Complaint fails to allege Norwegian had reason to know of Roe's propensity to commit a sexual assault. For these reasons, the Court finds the factual allegations are deficient with respect to foreseeability.

Doe also fails to engage with the case law Norwegian introduces. Conversely, the only authority Doe cites in her Response is *Torres v. Carnival Corp.*, 635 F. App'x 595 (11th Cir. 2015), holding that cruise ship operators owe passengers "the duty of exercising reasonable care under the circumstances of each case." *Id*. at 600-01. Doe's argument does not address foreseeability. As the Court previously observed, "a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. Apr. 1, 2019) (citing *Phillips v. Hillcrest Medical Center*, 244 F.3d 790, 800 n.10 (10th Cir. 2001)). "[T]he onus is on the parties to formulate arguments." *Id*. (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)).

The Court finds Norwegian's case law is instructive. As Norwegian argues, the Eleventh Circuit in *Fuentes* held that a plaintiff may not rely upon a "generalized theory of foreseeability that is divorced from the particular events in question." 32 F. 4th at 1318. Doe does just that by relying on general cruise line safety standards to support her argument that the sexual assault here was foreseeable. The Eleventh Circuit recently addressed the sufficiency of factual allegations to permit a finding of foreseeability in *H.S. by and through R.S. v. Carnival Corp.*, 727 Fed. App'x 1003 (11th Cir. 2018). In *H.S.*, the plaintiff, a minor, argued there were repeated sexual acts that occurred in front of the cruise line's employees that precipitated the alleged sexual assault. *Id*. at 1004. The plaintiff alleged that employees saw a teenage boy attempt to remove the clothes of the minor plaintiff and engage in other acts at a club aboard the vessel in a public area, prior to visiting

9

the guest rooms of her "peers." *Id*. at 1006. However, the court found those facts were insufficient to support that the defendant could have reasonably foreseen that a sexual assault would then occur in a private guest room. *Id*. at 1006. Here, Doe has not alleged that any events precipitated the assault, as in *H.S.,* or were observed by any agent or employee of Norwegian, including APS. Accordingly, Doe has failed to sufficiently allege the sexual assault was foreseeable. While the Court has already found Count 1 fails to state a claim, the lack of allegations regarding foreseeability is an additional reason for dismissal.

### iii. Commingled Claims

Doe continues to impermissibly commingle claims within Count 1. The Court briefly addresses this additional issue, considering it previously discussed this deficiency during the March 20, 2024 motion hearing. ECF No. [59]. This Court held in *Finch v. Carnival*, 701 F. Supp. 1272 (S.D. Fla. Nov. 6, 2023) that dismissal is warranted when a claim commingles negligent hiring, negligent retention, and negligent training into one count:

> Consistent with the distinctions between these three negligence claims, courts have routinely dismissed complaints that combine these causes of action into a single count as shotgun pleadings. *Reed* 2021 WL 2592914, at *9 ("negligent supervision and negligent training are separate claims which must be pled separately[]"); *Burgess v. Royal Caribbean Cruises Ltd*., Case No. 20-CV-20687, 2020 U.S. Dist. LEXIS 188606, at *4-5 (S.D. Fla. Oct. 9, 2020) (claim titled "Negligent Hiring, Selection, Retention, Monitoring and Training" is an impermissible shotgun pleading because "[t]hese counts combine different causes of action that have distinct elements of law and require different findings"); *Baldoza v. Royal Caribbean Cruises, Ltd*., No. 20-22761-CIV, 2021 WL 243676, at *5-6 (S.D. Fla. Jan. 25, 2021) (dismissing a cause of action titled "Negligent Hiring, Training, Supervision, and/or Retention" as an impermissible shotgun pleading because those claims must be pled separately); *McFee*, 2020 U.S. Dist. LEXIS 21062, at *20-21 (S.D. Fla. Feb. 3, 2020) (finding that claim titled "Assumption of Duty (Negligent supervision and/or training)" contained two separate causes of action rendering the claim an impermissible shotgun pleading).

*Id*. at 1283-84

Similarly, in *Doe v. NCL (Bahamas) Ltd.*, No. 18-20060-Civ-Scola, 2018 WL 3848421 (S.D. Fla. Aug. 13, 2018), the plaintiff asserted both a negligence claim and a strict liability claim based on a sexual assault aboard the defendant's vessel. *Id.* at *1. In *Doe v. NCL*, the defendant cruise line NCL argued that the plaintiff failed to state a claim for negligence and negligent hiring and the court agreed and dismissed the negligence claims for negligent hiring, training, monitoring, and retention at the motion to dismiss stage. *Id.* at 4. The court found that the plaintiffs' attempts to assert these claims lacked sufficient factual detail to withstand a motion to dismiss. *Id* at *3.

"Negligent training occurs when an employer was negligent in the implementation or operation of the training program and this negligence caused a plaintiff's injury." *Id.* at *3. In *Doe v. NCL*, the court determined that the plaintiff did not sufficiently allege that NCL's negligent implementation or operation of its training program led to the sexual assault. *Id.* The Second Amended Complaint suffers from the same deficiency. The Court has already granted dismissal of the negligence claim in Count 1 as a plaintiff cannot bring a negligence claim for the same tort the defendant is strictly liable for. Nevertheless, the Court again finds that Doe has also impermissibly commingled her negligence claims in Count 1.

Here, Doe contends that she differentiates the negligence and strict liability claims against Norwegian. ECF No. [64] at 4. However, Doe alleges APS and Norwegian "failed to properly vet their security guards, failed to properly hire, failed to properly train and/or supervise, and failed to properly warn passengers" ECF No. [60] ¶¶ 48, 49. Those allegations are insufficient. To sufficiently allege negligent hiring or retention, a plaintiff must show that "(1) the agent/employee/contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury." *Id.* at *3. To support

11

these claims, a plaintiff must assert facts that show the employer was on notice that the employee exhibited harmful tendencies. *Id.* In *Doe v. NCL*, the plaintiff failed to allege that the aggressor-employee was "incompetent or unfit to perform" his work or that "NCL knew or should have known of Defendant's unfitness or harmful propensities before or after he was hired." *Id.* Accordingly, in the instant case, as in *Doe v. NCL*, "these broad and indirect allegations did not speak to the negligent hiring or retention of the Defendants in particular," warranting dismissal.

Moreover, "[n]egligent training occurs when an employer was negligent in the implementation or operation of the training program and this negligence caused a plaintiff's injury." *Id*. at *3. In *Doe v. NCL*, the plaintiff did not sufficiently allege that NCL's negligent implementation or operation of its training program led to the sexual assault. *Id*. Here, Doe also fails to sufficiently plead that Norwegian negligently hired Roe. Further, as detailed above, Count 1 commingles elements of negligent hiring, negligent training, negligent supervision, and failure to warn claims without providing sufficient allegations with respect to each claim. Consistent with *Doe v. NCL*, the Court finds dismissal is also warranted for this independent reason.

**B. Punitive Damages**

Defendant argues that, absent intentional misconduct, punitive damages are unavailable even under the strict liability standard. ECF No. [62] at 10 Norwegian relies on *In re Amtrak Sunset Ltd. Train Crash*, 121 F.3d 1421 (11th Cir. 1997) for support that nonpecuniary damages, punitive damages in particular, are not available to plaintiffs absent the "very rare situations of intentional wrongdoing." *Id*. at 1429. Doe agrees that the *Amtrak* standard governs the availability of punitive damages but maintains that punitive damages are nevertheless warranted as Norwegian should have provided extra protection "given the rowdy nature of the cruise" and its failure to warn of Roe's propensity to commit a sexual assault. ECF No. [64] at 9. Norwegian replies that Doe fails

to allege that it ratified or authorized Roe's conduct, or acted with intentional misconduct itself, thus Norwegian cannot be liable for punitive damages. ECF No. [65] at 4.

The Court agrees with Norwegian. As the Eleventh Circuit has made clear in *Amtrak*, punitive damages are only available to a plaintiff for extraordinary intentional conduct, and extended its prior holdings to specifically "preclude the availability of punitive damages in personal injury actions brought under the general maritime law." 121 F.3d at 1249. The only narrow exception provided requires a showing of intentional wrongdoing, or willful and wanton misconduct. *Id*. at 1423, 1429. A review of the Second Amended Complaint as to Norwegian reflects an absence of any factual allegations of wanton or willful conduct, or intentional wrongdoing to support an entitlement to punitive damages. The Court accordingly agrees with Norwegian that Plaintiff fails to state a claim for punitive damages and the Motion is granted as to Doe's request for punitive damages in Counts 1 and 2.

**C. Leave to Amend**

Doe raises an argument that there is a right to amend her Second Amended Complaint because "[a] plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try and amend her complaint before the entire action is dismissed." ECF No. [64] at 10. Doe cites to *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682 n.3 (7th Cir. 2004) for support that leave to amend should be freely given after dismissal of the first complaint. *Id*. at 687 n.3. Norwegian's reply is not responsive to this argument.

The Court finds leave to amend in this case would be futile. Doe's primary argument is that "[t]he better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears." *Barry Aviation*, 377 F.3d at 687. However, this Court has *already* given Doe an

opportunity to amend her previous complaints. Doe has already filed three complaints and has sought leave to amend from this Court twice.

Doe's reliance on a case from outside of this district is unavailing. In *Barry Aviation*, the Seventh Circuit reversed the ruling of the district court that denied the plaintiff's request for leave to amend its complaint on the grounds that the statute of limitations had expired pursuant to 18 U.S.C. § 1961 and 42 U.S.C. § 1983, rendering any proposed amendment futile. *Id*. at 686. The Seventh Circuit relied on the doctrine of equitable estoppel, which "suspends the running of the statute of limitations during any period in which the defendant took active steps to prevent the plaintiff from suing," to find that amendment would not be futile. *Id*. at 689. The court determined that the plaintiff's complaint set forth facts that "could establish that the defendants 'conceal[ed] evidence from the plaintiff that [it] needed in order to determine that [it] had a claim.'" *Id*. Thus, the court determined that the plaintiff could state a claim upon which relief could be granted and leave to amend was improperly denied by the district court. *Id*. at 690.

None of the circumstances that existed in *Barry Aviation* are present here. Doe fails to explain how the reasoning in *Barry Aviation* applies to this case. Rather, Doe seemingly relies on one legal proposition articulated in *Barry Aviation*, which does not apply. *Barry Aviation* clearly states that giving leave to amend is "especially advisable when such permission is sought after the dismissal of the *first* complaint." *Id*. at 687 (emphasis added). As pointed out, Doe has already filed three complaints.

At a motion hearing held on March 20, 2024, this Court found "that the . . . First Amended Complaint is a shotgun pleading," but "believe[d] that there is a viable cause of action that can be alleged against Defendant Almighty Protection Services," and accordingly dismissed Doe's First Amended Complaint without prejudice, allowing Doe an opportunity to correct the shotgun

pleading issues. ECF No. [59] at 1-3; 21-24; 30–31; ECF No. [56]. The Court also made clear that the next complaint must resolve those pleading deficiencies. *Id*. at 37:4-21. As the Court stated during the hearing, continued failure to cure the deficiencies "would certainly show the Court that it would be futile on the Plaintiff's part to be able to plead sufficient causes of action against the remaining Defendants." *Id*. As discussed, Count 1 contains several deficiencies. For the reasons stated above, Norwegian's Partial Motion to Dismiss Count 1 is granted and leave to amend is denied.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Norwegian's Partial Motion to Dismiss, **ECF No. [62]**, is **GRANTED**.

2. Norwegian shall answer Count 2 of the Second Amended Complaint **by September 4, 2024**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 21, 2024.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record